Michael PUMA, John Sheridan, Lou Gutin, Michael Sabatino and Al Capolino, Plaintiffs,

v.

Mortimer BRANDENBURG, Joseph Matranga, Max Drexler, Edward Drexler, Howard Goldstein, Joseph Leff, Matthew Levitt, Jack Schwartzberg and Norman Joseph, Defendants.

No. 69 Civ. 3832.

United States District Court, S. D. New York.

March 15, 1971.

Godfrey P. Schmidt, New York City, for plaintiffs.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for defendants by Emanuel Dannett, Jacob Silverman, and Robert I. Gosseen, New York City, of counsel.

### FINDINGS OF FACT *

POLLACK, District Judge.

### A. PLAINTIFFS

1. Plaintiffs, Michael Puma, John Sheridan, Lou Gutin, Michael Sabatino and Al Capolino, at all relevant times were and still are members in good standing of Liquor Salesmen's Union Local 2 of the State of New York ("Local 2"), affiliated with Distillery, Rectifying, Wine and Allied Workers' International Union of America, AFL–CIO ("International").

2. Plaintiffs are all liquor salesmen, licensed as such by the State of New York, and employed by wholesale distributors of liquors under labor con-tracts negotiated by said employers and Local 2.

3. Plaintiffs duly obtained leave of this court to bring this action (see order made and entered herein on September 5, 1969).

### B. DEFENDANTS

4. Local 2 is a "labor organization" under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"); and, at all relevant times, defendants are and were officers, agents and representatives of Local 2.

5. At all relevant times defendant Mortimer Brandenburg ("Brandenburg") was and still is President of Local 2; and, since 1958, he has also been President of the International.

6. Since April 29, 1957, Joseph Matranga ("Matranga") was and still is Executive Vice President of Local 2; and prior to that date and since 1955 he was a member of the Executive Board or Committee ("Executive Board") of Local 2.

7. Max Drexler was, for more than 20 years prior to his retirement in 1968, the Executive Secretary of Local 2.

8. Edward Drexler (son of Max Drexler) was, since January 1964 and until his resignation in 1968, the Second Vice President of Local 2.

9. Howard Goldstein ("Goldstein") since 1955 was and still is a member of the Executive Board of Local 2; and since April 9, 1957, he has been Treasurer of Local 2.

10. Joseph Leff ("Leff"), since 1964 and until his resignation in 1968, was a member of the Executive Board of Local 2.

11. Matthew Levitt ("Levitt"), since 1955 and until his resignation in 1968, was a member of the Executive Board of Local 2.

12. Defendant Jack Schwartzberg ("Schwartzberg") was a member of the Executive Board of Local 2 from January, 1956 to January 9, 1970.

* Findings Nos. 1 through 48 were agreed to by both parties.

13. Defendant Norman Joseph ("Joseph") since 1936 was and still is a member of the Executive Board of Local 2.

14. At all relevant times the individuals named in Findings 5 through 13 hereof, together with Nat Fox ("Fox"), now deceased, constituted a majority of the Executive Board of Local 2.

15. During his lifetime Fox was at all relevant times the Recording Secretary and a member of the Executive Board of Local 2.

16. In addition to being President of Local 2 and President of the International, defendant Brandenburg since 1967 or 1968 was and still is Executive Business Manager of the Wholesale Wine Salesmen's Union, Local 18 ("Local 18"), affiliated with the International.

## C. ORGANIC LAW OF LOCAL 2

17. (a) The general powers and duties of the officers, agents and representatives of Local 2, for the period beginning some time prior to 1956 and ending November, 1959, were set forth in the Constitution of Local 2 (Plaintiffs' Exhibit A–1; "Local 2's Original Constitution"); and, for the period beginning November, 1959 and continuing to date, were set forth in the current Constitution of Local 2 (Plaintiffs' Exhibit A–2; [1] "Local 2's Current Constitution").

(b) The general powers and duties of the officers, agents and representatives of Local 2 are to some extent also governed, for the period prior to 1956 and ending in 1960, by the Constitution of the International (Plaintiff's Exhibit B–1; "International's Original Constitution"); and, for the period beginning

in 1960 and continuing to date, by the International's Current Constitution (Plaintiff's Exhibit B–2; "International's Current Constitution").

18. Section 5 of Article XV of Local 2's Original Constitution provides:

"They [members of the Executive Board] shall have full right and power to fix compensation and award for services or employment rendered the Union and to fix terms and salaries of officers."[2]

19. Section 6 of Article XV of Local 2's Original Constitution provides:

"In any event, if it shall be impossible or not feasible to gather the memberships of the Union together expeditiously enough to act upon any situation requiring immediacy of action, it shall have full power to do any act or series of acts in behalf of the Union with the same force and effect as if it acted upon in like manner by the Union sitting as a whole in meeting." [3]

20. Article XXVIII of Local 2's Original Constitution, entitled "Meetings," provides as follows:

### "MEETINGS

"Section 1. The regular meeting of the Union shall be held monthly on the first Monday of each month, at such place and hour of the day as may be designated by the Executive Committee.

"Section 2. The Chairman at the request of the Business Representative or majority vote of the Executive Committee may call a special meeting of the Union at any time or place in order to have the Union consider any emergency situation which the Executive Committee might refuse to deter-

---

1. Local 2's Current Constitution has been amended since November 1959 as to matters which the parties do not deem relevant to the instant controversy.

2. The same provision is contained in Article XIII of Local 2's Current Constitution. Whenever a clause common to two documents is quoted herein, the language in both documents is the same except for minor typographical differences.

3. The same provision is contained in Article XIII of Local 2's Current Constitution. Whenever a clause common to two documents is quoted herein, the language in both documents is the same except for minor typographical differences.

mine or act upon within the limits of the time required by such situation, and any and all acts or decisions reached at such special meeting shall have the same force and effect as if acted upon at a regular meeting. Notice of such special meeting shall be sent to all members in good standing, giving sufficient time to accomplish attendance thereat."

21. Section 1 of Article XXXV of Local 2's Original Constitution and Section 1 of Article XXI of Local 2's Current Constitution provide as follows:

"Section 1. All officers, except those holding financial positions, shall have the privilege of resigning at any time, provided, however, that no charges exist against them. All officers not holding a financial position, and desiring to resign shall present their resignation in writing at a regular meeting, and if, at the following meeting, no charges exist against the officer or officers, the resignation may be accepted. Any officer holding a financial position shall present his resignation in writing at a regular meeting, and after his accounts have been audited and found correct, and a full report of same made to the Treasurer and received his approval, the resignation may be accepted at any following meeting; and if his accounts are not found correct the resignation shall not be accepted, nor shall he be released from his bond until his accounts are made good."

22. Section 2 of Article XX of Local 2's Current Constitution provides:

"Section 2. The pre-election meeting of the general membership shall be called in January of each election year by the Nominations and Elections Committee, on proper notice to the members. At such meeting, the membership will be advised of the official action of the Nominations and Elections Committee and of the candidates running for the several offices. Thereafter, when required, an election shall be held not less than seven days following the pre-election meeting. A second notice of election shall be mailed out to the membership by the Nominations and Election Committee."

23. Section 2(d) of Article III of the International's Original Constitution provides:

"(d) Any local union accepting and holding a charter from this International and becoming an affiliate in membership, does so only upon condition that it recognizes the supreme jurisdiction of the International Union and accepts the Constitution and By-Laws of this International Union as its fundamental law, reserving to itself no rights of self-government which are inconsistent or in violation of the Constitution and By-Laws of the International Union." [4]

24. Section 1 of Article IV of the International's Original Constitution provides:

"Section 1. The government of all local unions and members shall be vested in this International Union as the supreme head to which all matters of general importance shall be referred, and whose decision shall be final." [**]

25. Section 3 of Article IX of the International's Original Constitution and Section 4 of Article XI of the Interna-

---

4. The same provision except for the addition of the word "with" is contained in Section 1(f) of Article IV of the Current Constitution.

** Section 1 of Article VI of the International's Current Constitution is substantially similar and provides:
  "Section 1. The government of all Local Unions, Regional Councils and members shall be vested in this International Union as the supreme body to which all matters of general importance shall be referred, and whose decision shall be final. The determination by the General Executive Board as to which matters are of general importance shall be conclusive."

tional's Current Constitution provide in part as follows:

"The revenue of the local unions shall be all receipts from initiation fees and dues subject to such limitation as provided for in Sections 4 and 5 of Article III hereof. Local unions shall retain the entire receipts from local assessments and local fines. Local funds shall be used only for local running expenses and shall, under no circumstances, be used in promoting the election of any person or persons or for the circulation of literature in opposition to or criticism of the Organization and its Executive Officers, either Local or International, nor shall funds be used for legal purposes to set aside any decision of any constitutional body within the union."

26. Section 7 of Article X of the International's Original Constitution and of Article XII of the International's Current Constitution provides:

"The Treasurer shall receive all Local funds from the Financial Secretary, pay all bills approved by the Local and signed by the President, keep a correct account of the same, report to the local union at each meeting and turn over to his successor all books, papers, funds and other property of the Local in his possession. The Treasurer shall furnish a surety bond to secure the funds and property of the union, deposit all funds not required for the necessary expenses of the Local in such bank or banks as to the local union may select, in the name of the local union. The Trustees [are] to examine the bank books at each meeting and to ascertain if the funds of the local union have been properly deposited. No Treasurer shall be permitted to serve until a bond has been filed and accepted by the Executive Board or the Trustees in a sum sufficient to protect his handling of Local funds, and upon the expiration of the term of office of such

bonded Treasurer his successor shall not be permitted to handle the union funds until he has qualified by filing his bond in the manner herein provided. Such surety bond shall be applied for and obtained only through the office of the General Secretary-Treasurer. The expense of the surety bond shall be paid by the local union."

27. Section 10 of Article X of the International's Original Constitution and of Article XII of the International's Current Constitution provide in part as follows:

"The Local Executive Board shall organize by choosing a Chairman, Vice-Chairman and Secretary. It shall be the duty of such board to call a special meeting of the local union when necessary, declare vacant the seat of any member of the board absent for three consecutive meetings; summon shop crews or members; investigate and report upon all applicants for membership; consider all grievances and endeavor to settle same; carefully supervise all officers and business interests of the local union; adjust wages and conditions of employment, subject to the control of the local union; see that all laws are enforced; perform such other duties as this Constitution may require; and set aside personal feelings and interests, and at all times endeavor to serve the best interests of the members and the union as a whole."

29. Article V of Local 2's Original and Current Constitutions provides:

"ARTICLE V

"1. Calling the meeting to order.

2. Roll call of officers.

3. Reading of minutes.

4. Election and initiation of new members.

5. Bills and communications.

6. Nomination of officers.

7. Election of officers.

8. Report of Committees, delegates and officers.

9. Unfinished business.

10. New Business.

11. Treasurer's report.

12. Good and welfare of the Organization

13. Adjournment."

## D. THE OFFICERS' PENSION PLAN

30. On December 12, 1956, Goldstein, Schwartzberg, Levitt, Matranga, Max Drexler, Arthur Berne, George Veasey, Fox and Brandenburg, constituting a quorum of the Executive Board of Local 2, attended a regular meeting at the Local 2 offices, beginning at 3:20 P.M. Plaintiffs' Exhibit C is a copy of the minutes of that meeting.

31. At said Executive Board meeting held on December 12, 1956, after Brandenburg and Max Drexler were temporarily excused from said meeting, resolutions were unanimously adopted creating a retirement benefit fund plan ("Officers' Pension Plan") for full-time, paid, elected officers of Local 2 (the provisions of said benefit plan being set forth at length in said minutes); at said meeting the Executive Board was also authorized to execute an agreement establishing such plan for retirement benefits for full-time, paid, elected officers in the form submitted to said meeting. Plaintiff's Exhibit D (the "Escrow Agreement") is a copy of that agreement.

32. The basic provisions of the Officers' Pension Plan were formulated by Samuel Kosman who had been retained by officers of Local 2 as a consultant to develop and propose an industry-wide pension plan for employee members of Local 2 pursuant to the terms of a collective bargaining agreement negotiated by Local 2 with employers in the liquor industry.

## E. THE ESCROW AGREEMENT OF DECEMBER 12, 1956

33. Following the meeting of the Executive Board held on December 12, 1956, members of the Executive Board and the Manufacturers Trust Company ("Manufacturers"), whose name has since been changed to Manufacturers Hanover Trust Company, executed the Escrow Agreement. The signatories to the Escrow Agreement on behalf of Local 2 were Levitt, Schwartzberg, Veasey, Matranga, Goldstein, Max Drexler, Brandenburg, Berne, Cilento and Fox, the latter three having died prior to institution of this action.

34. Pursuant to the terms of the Escrow Agreement, on January 27, 1957, the sum of $200,000 was deposited by Local 2 with the Manufacturers, as Escrow Agent, for the purpose of creating a fund (the "Guaranty Fund") to guarantee to each elected officer of Local 2 and his contingent beneficiary, if any, covered by the Agreement, the retirement benefits provided for in the Officers' Pension Plan.

35. The Escrow Agreement provides in paragraph 2(e) as follows:

"(e) The Escrow Agent shall be under no duty to enforce payment of any deposit herein agreed to be made by the Union."

36. The Escrow Agreement provides in paragraph 15 as follows:

"15. Until paid out pursuant to the provisions of this Agreement, all money and other property held by the Escrow Agent in the Guaranty Fund shall remain the property of the Union, but subject to all provisions of this Agreement."

37. During the period beginning with the creation of the Guaranty Fund and ending December 31, 1969, the

following sums were deposited by Local 2 with Manufacturers:

| 1957 | $ 38,650 | |
| | 173,000 | (cost value of savings bonds delivered to Manufacturers by Local 2 in January 1957) |
| 1958 | 6,700 | |
| 1959 | 0 | |
| 1960 | 0 | |
| 1961 | 48,000 | |
| 1962 | 30,000 | |
| 1963 | 0 | |
| 1964 | 0 | |
| 1965 | 8,000 | |
| 1966 | 0 | |
| 1967 | 0 | |
| 1968 | 0 | |
| 1969 | 11,000 | |
| Total | $315,350 | |

38. The Guaranty Fund, as of December 31, 1969, as reported by Manufacturers, in its last accounting (Plaintiffs' Exhibit E) consists of assets having a market value of $396,857.33.

39. The Escrow Agreement was amended by an agreement dated April 4, 1957 (Plaintiffs' Exhibit F) which was signed by members of the Executive Board of Local 2 and by Manufacturers.

### G. MEMBERSHIP MEETING OF JANUARY 30, 1957

40. Pursuant to notice dated January 16, 1957, and mailed to the membership (Plaintiffs' Exhibit G) a general membership meeting of Local 2 was held on January 30, 1957, at the Manhattan Center in New York City.

41. The minutes of the meeting (Plaintiffs' Exhibit H) contain a resolution introduced by member Bluhm with respect to the Officers' Pension Plan, which was carried unanimously. The resolution is separately marked Plaintiffs' Exhibit I.

### H. PAYMENTS AND RIGHTS UNDER THE OFFICERS' PENSION PLAN

42. The first full-time, paid elected officer of Local 2 to whom retirement benefits were paid was Sol Cilento, who retired effective March 8, 1957, and who died on March 8, 1959. Cilento, pursuant to the terms of the Officers' Pension Plan, was paid a pension at the rate of $20,000 per year from the date of his retirement until his death.

43. In a letter dated April 4, 1957, signed by all members of the Executive Board (Plaintiffs' Exhibit J), Manufacturers, the Escrow Agent, was "advised to pay to Mr. Sol Cilento, a retired elected official, * * * his annual retirement as set forth in the annual report filed with you on April 1st, 1957, in equal monthly instalments."

44. By letter dated July 31, 1968 (Plaintiffs' Exhibit K), signed by all members of the Executive Board, to Manufacturers as Escrow Agent, Manufacturers was "advised to pay Mr. Max Drexler, a retired elected official, * * his annual retirement as set forth in the annual report filed with you on December 31st, 1967, in equal monthly installments."

45. The effective date of Max Drexler's retirement was August 1, 1968. His pension pursuant to the Officers' Pension Plan is $20,000 per year during his retirement, and all payments will cease upon his death.

46. A copy of the Annual Report to the Escrow Agent for the year ending December 31, 1967, submitted by Local 2 (Plaintiffs' Exhibit L), shows the service credits of the officials of Local 2 at that time.

### I. LM–2 REPORTS FILED BY LOCAL 2

47. On March 29, 1960, Local 2, pursuant to the provisions of the LMRDA, filed its first LM–2 Report (Plaintiffs' Exhibit M–1), and reference therein was made to the Officers' Pension Plan. An LM–2 Report was filed by Local 2 in each subsequent year through 1969 (Plaintiffs' Exhibits M–2 through M–11), and each report contains a reference to the Officers' Pension Plan.

### J. MEMBERSHIP OF LOCAL 2

48. The membership of Local 2 consisted of 1662 members in December

1956 and 1519 members in December 1970.

## ADDITIONAL FINDINGS AND OPINION

This is an action challenging the validity of an Officers' Pension Plan for full time, paid, elected executives adopted on December 12, 1956 by the Executive Board and ratified January 30, 1957 by the membership of a labor union.

Plaintiffs, members of Liquor Salesmen's Union Local 2 of the State of New York (hereinafter "Local 2"), brought this action pursuant to leave granted by this Court on September 5, 1969 against the officers and the members of the Executive Board of Local 2.

■ Jurisdiction is laid under Section 501(a) and (b) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA hereafter) (29 U.S.C. § 501(a) and (b)). Section 501 imposes on labor representatives a fiduciary duty to the labor union and its members in respect of the management of union funds and other property.

Plaintiffs claim that the establishment of the Pension and Retirement Benefit Plan and Fund, was illegal and was never authorized by law or Union by-law or constitution.[1] Defendants assert that the Plan was legal, fair, authorized and validly adopted and that the LMRDA enacted in 1959 does not apply retroactively to this Plan adopted in 1956 and, moreover, that this claim asserted 13 years later is barred by laches. Basically, the issues concern the disposition of the funds that have accumulated in the Fund (about $400,-000.).

The Court finds that the Local 2 Executive Board was fully authorized to and did validly adopt the Officers' Pension Plan and that the Plan, although not required by Union constitution or by-law to be ratified, was in fact duly submitted to and properly ratified by the general membership.

The Officers' Pension Plan was adopted at a regular meeting of the Executive Board of Local 2 on December 12, 1956. A quorum was present and the action was taken by an independent majority of the Board. At the same time, the Board also authorized the execution of an agreement establishing the Plan. This agreement (the "Escrow Agreement") named Manufacturers Trust Co. (now Manufacturers Hanover Trust Co.) as the escrow agent for the Pension Fund and on January 27, 1957 $200,000 of Local 2's funds was deposited with the escrow agent in a Guaranty Fund. At the present time, through additional deposits of Local 2's funds and appreciation, the Fund contains approximately $400,000.[2] This Fund is designed to guarantee payment of retirement benefits to those officers covered by the Plan.

Pursuant to a notice dated January 16, 1957, and mailed to the membership, a general membership meeting of Local 2 was held on January 30, 1957. At that meeting the membership present considered and unanimously passed a resolution (the "Bluhm Resolution") ratifying the action taken by the Executive Board in adopting the Officers' Pension Plan.

■ The Executive Board clearly had authority to enact the Officers' Pension Plan and the accompanying Escrow Agreement. Section 5 of Article XV of Local 2's original constitution, which was then in effect, provides:

> They [the members of the Executive Board] shall have full right and power to fix compensation and award for services or employment rendered the UNION and to fix terms and salaries of officers.

1. By letter dated July 15, 1970 and introduced in evidence at trial, counsel for plaintiff stipulated that this was the only cause of action asserted in the complaint.

2. This figure is based on Manufacturer's latest accounting, which was as of December 31, 1969.

■ The general rule is that the term "salaries" is to be broadly construed to include pensions, which are merely a form of delayed compensation. *Cf.* Inland Steel v. NLRB, 77 N.L.R.B. 1 (1948), aff'd, 170 F.2d 247 (7th Cir. 1948), cert. denied, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949). The N.L.R.B. said therein (p. 4) that:

wages * * * include * * * pension and insurance benefits * * this type of wage * * * becomes an integral part of the entire wage structure * * *.

In Matter of Giannettino v. McGoldrick, 295 N.Y. 208, 212, 66 N.E.2d 57, 59 (1946), the Court said that:

Vacation pay and pension benefits are not gratuities. Pension annuities, after the expiration of the period of active service, are in the nature of compensation for the services previously rendered for which full and adequate compensation was not received at the time of the rendition of such services.

The fact that the instant suit is being brought under the LMRDA does not alter the applicability of the general rule to this case, especially since the Plan was adopted in accordance with Local's 2 constitutional provision. *Cf.* Morrissey v. Curran, 302 F.Supp. 32 (S.D.N.Y.1969), aff'd, 423 F.2d 393 (2d Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970).

■ However, merely because an Executive Board has the power to set officers' salaries (including pensions), does not mean that it has unlimited power to do so. Section 501 of the LMRDA imposes on labor representatives a fiduciary duty to the labor union and its members in respect of the management of union funds and other property. This fundamental obligation applies as well to the conduct of union representatives prior to the effective date of the LMRDA. Consequently, the terms of the instant Officers' Pension Plan must be inspected in the light of this fiduciary duty to determine whether the Plan was essentially fair or whether it was so over-generous or otherwise improper as to amount to a violation of trust.

■ The terms of the Plan provide for a pension for all full-time, paid, elected officials of the union who have 15 years of service and who have attained the age of 60 years. The amount of the pension is $1,000 per year for each year of service up to a maximum of $20,000. At the time the Plan was enacted there were three full-time, paid, elected union officials who came under its coverage. Since then two of these officials have retired and received benefits and two others have achieved coverage under the Plan. The salaries of those covered by the Plan have been in the neighborhood of $30,000 since 1960.[3]

These officers were not covered by the Members' Pension Plan, which had been ratified by the membership on October 24, 1956 after it was achieved through collective bargaining with the employers, because the officers were representatives of the employees and as such, were barred from accepting anything of value from the employers, 29 U.S.C. § 186.

■ The Court finds that the Officers' Pension Plan is reasonably related to long tenure of service, is not over-generous in amount, and represents no breach of fiduciary duty by the Executive Board which enacted it. Further, the Guaranty Fund is not an unreasonable method of insuring the payment of benefits under the Officers' Pension Plan. There was no violation of Section 501, LMRDA.

Union officers will not be guilty of breach of trust under this section

---

3. This figure is derived from the LM–2 reports which the Union has been required to file since 1960 and which were introduced in evidence at the trial. There is no evidence as to the officers' salaries at the time the Officers' Pension Plan was enacted.

when their expenditures are within the authority conferred upon them either by the constitution and by-laws, or by a resolution of the executive body, convention or other appropriate governing body—including a general meeting of the members—not in conflict with the constitution and by-laws. 105 Cong.Rec. 17900 (1959).

■ Plaintiffs argue that the ratification was insufficient because the membership was not given proper notice of the meeting and because the terms of the Officers' Pension Plan were not explained to the members before they approved it in the Bluhm Resolution. These arguments lack merit.

The notice of the January 30, 1957 meeting was sufficient. While it is true that the only issues specifically denominated on the notice as subjects of the meeting were "Officers' Reports" and "Nomination of Officers", the notice indicated that this was to be "a general meeting of the entire membership." At such a meeting it is obviously contemplated under the provisions of Article V ("Order of Business") of Local 2's Constitution that new business may be taken up without the necessity of a special notice. The resolution here submitted for membership approval was such new business and hence to put it before the membership at this annual meeting was procedurally correct. *See also* Robert's Rules of Order, which govern the conduct of membership meetings under Article XXIII of Local 2's Constitution.

■ There is conflicting evidence in the record as to whether the details of the Officers' Pension Plan were explained at the January 30, 1957 meeting prior to the ratification vote. The Court finds that the Plan was carefully and fairly explained to the membership by a pension plan consultant engaged to prepare the Plan. He had also been consulted and had prepared the Plan adopted previously for the benefit of non-officer members of the Union. It is clear from the minutes of the membership meeting that the membership knew that they were voting on the Officers' Pension Plan. If they asked no questions in respect of the details of such a Plan, then they cannot now claim that they were improperly prevented from voting intelligently on the ratification resolution. Moreover, an interested member could have read the minutes of the December 12, 1956 Executive Board meeting in which the details of the Plan were clearly set forth. The Plan was knowingly and intelligently ratified by unanimous vote of the membership present at the meeting.

At no time prior to 1967 did plaintiffs, with respect to the Officers' Pension Plan, assert the claims made in this action, or demand that the officers of Local 2 take steps to set aside the Officers' Pension Plan.

Thus, plaintiffs have failed to show that the "establishment of the [Officers' Pension Plan] was illegal and was never authorized by Union by-law or constitution." The defendants have committed no breach of fiduciary duty.

The foregoing agreed and the additional findings shall constitute the decision required by Rule 52(a), Fed.R.Civ. P.

Complaint dismissed.

So ordered.