**INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, LOCAL 34, Plaintiff,**

**v.**

**CARGILL, INC., a corporation, Defendant.**

**No. C–73 648 ACW.**

United States District Court,
N. D. California.

March 18, 1974.

See also 357 F.Supp. 608.

Norman Leonard, Richard Gladstein, Gladstein, Leonard, Patsey & Andersen, San Francisco, Cal., for plaintiff.

Harry A. Jackson, Jr., San Francisco, Cal., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WOLLENBERG, District Judge.

This lawsuit began as a dispute between Cargill, Inc., and the International Longshoremen's and Warehousemen's Union, Local 34 (hereinafter "ILWU") over whether the collective bargaining agreement then existing between these parties required Cargill to employ a supercargo in its copra operations at Pier 84 in San Francisco. Pursuant to the collective bargaining agreement the dispute was submitted to arbitration, and on April 9, 1973, the arbitrator rendered a decision in favor of the ILWU. On April 20, 1973, the ILWU initiated a civil suit in this court to compel Cargill to comply with the arbitrator's decision, and on August 29, 1973, by order of this Court, the arbitration award was confirmed.

The case is again before the Court on plaintiff's motion for summary judgment, this time to fix the amount of retroactive pay Cargill must pay the ILWU as a result of the arbitration award. Before submitting the dispute to arbitration, both parties agreed Cargill would be liable for retroactive pay if the question submitted to arbitration were resolved in favor of the ILWU. Cargill does not disclaim this liability, but insists that retroactive pay due the ILWU does not include fringe benefits which would have been paid into various trust accounts on behalf of the supercargoes.

Characterizing the retroactive pay award as one for back wages, the ILWU's position is that the term "wag-

es" includes fringe benefits, Puma v. Brandenburg, 324 F.Supp. 536, 544 (S.D. N.Y.1971); Inland Steel v. NLRB, 170 F.2d 247 (7th Cir. 1948); Ware v. Merrill Lynch, etc., 24 Cal.App.3d 35, 44, 100 Cal.Rptr. 791 (1972), and that an award for back wages must include the value of fringe benefits which would have been earned. NLRB v. Rice Lake Company, 124 U.S.App.D.C. 355, 365 F.2d 888, 892 (1966); *see also* decisions of the National Labor Relations Board cited at 7–8 of plaintiff's reply brief filed January 2, 1974.

Cargill claims the "back pay" cases relied upon by the ILWU are inapposite because they involve retroactive wages to the employee who would have earned them, whereas this case involves a lump sum payment to a union which under no conceivable set of circumstances could have become entitled to receive fringe benefits. Cargill claims fringe benefits are excluded from such lump sum payments by NLRB regulations and by the purpose of back pay arbitration awards. For reasons explained below, this Court finds that neither of these grounds is persuasive of Cargill's position, and that the value of fringe benefits is properly included in the ILWU's claim for retroactive pay.

Cargill relies upon an NLRB regulation governing back-pay proceedings, 29 C.F.R. § 102.53 (1973), for the proposition that before an award of back pay is proper, the union must first specify each employee who is to receive the pay and must set forth in detail

> the back-pay periods broken down by calendar quarters, the specific figures and basis of computation as to gross back pay and interim earnings, the ex-

penses for each quarter, the net back pay due, and any other pertinent information.

29 C.F.R. § 102.53(a) (1973).[1] This regulation has no application to the matter presently before the Court. By its own terms, it applies only "[w]here the specification procedure is used". That procedure is used when a dispute arises as to the amount of back pay due pursuant to a decision of the NLRB. The regulation limits its applicability to situations where a dispute exists as to the amount of back pay owing pursuant to an NLRB order or to a court decree enforcing such an order. The present case is not to enforce or interpret an order of the NLRB, but to enforce a collective bargaining agreement. Accordingly, the NLRB regulation relied upon by Cargill is not controlling here.

Next, Cargill claims the purpose of an arbitrator's award of back pay is to make the employee whole. Alliance Manufacturing Company, 61 LA 101 (August 14, 1973) (Gibson, Arbitrator). In Alliance Manufacturing Company, after an arbitrator ordered reinstatement with back pay of a wrongfully discharged employee, a dispute arose as to whether the back pay award was to include overtime which the union claimed would have been earned by the employee. In his written decision the arbitrator discussed the purpose of back pay awards:

> The theory upon which back pay is awarded a discharged employee upon reinstatement is the same theory upon which courts of law award damages for breach of contract of employment, viz., to make the employee whole for the loss sustained by reason of his discharge. The purpose is to put him

---

1. Cargill seems to claim that under this regulation it is entitled to a set-off for wages earned by supercargoes during employment elsewhere during the time Cargill was found to have been in violation of the collective bargaining agreement. Its only declared reason for not paying the full amount claimed by the ILWU, other than an alleged accord and satisfaction which will be discussed below, is the dispute over fringe ben-

efits. In fact, Cargill tendered the ILWU a check for the full amount owed less the value of fringe benefits. No set-off for "interim earnings" was claimed at the time of the tender. Cargill does not appear to take seriously its claim of a set-off, and, in any event, the claim is rejected by the Court for reasons discussed in the text immediately following this note.

in exactly the same position financially that he would have been in had the discharge not occurred. [citations omitted].

61 LA at 103.

As Cargill observed, however, cases concerning the rights of individual employees do not necessarily determine the rights of a union to a lump sum payment. Memorandum of Points and Authorities in Opposition to Plaintiff's Second Motion for Summary Judgment, at 2, filed December 10, 1973.

Unlike Alliance Manufacturing Company, the present case is not to remedy the wrongful discharge of an employee, but is to remedy Cargill's breach of its collective bargaining agreement. In passing Section 301 of the National Labor Relations Act, 29 U.S.C. § 185, Congress sought to provide powerful sanctions to ensure enforcement of collective bargaining agreements. Drake Bakeries v. Bakery Workers, 370 U.S. 254, 263, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), and authorities cited therein. It was hoped that industrial peace would result from adherence by all parties to agreements reached after collective bargaining. S. Rep.No.105, 80th Cong., 1st Sess. 17. This national policy that parties adhere to agreements entered into after collective bargaining would be undermined if one of the parties could breach that agreement and then, after the breach is discovered, be permitted to pay less than had he complied with the agreement initially. This Court would do violence to national labor policy if it were to follow such a course.

Finally, Cargill claims that including fringe benefits in the award would unjustly enrich the ILWU which then would receive money which otherwise would have gone into various trust funds. The same argument could, of course, be made against the entire award of retroactive pay to the ILWU: the union is receiving money which otherwise would have gone to employees individually. The Court is persuaded that Cargill would be unjustly enriched if it were to pay the ILWU less than if it had honored its written agreement. For this and the other reasons expressed above, it is held that by virtue of the arbitrator's award in this case Cargill became liable to the ILWU for the full amount it would have had to pay in wages, including fringe benefits, for the period in question.

Cargill argues, however, that it has no further liability to the ILWU because there has been a full accord and satisfaction of all claims arising from the arbitration and from this lawsuit. By letter dated October 31, 1973, Cargill's attorney, Harry Jackson, tendered to the attorney for the ILWU, Norman Leonard, a check in the amount of $10,290.-00.[2] Written on the bottom of the check was the following statement:

In payment of:

See attached letter of Harry A. Jackson, Jr. to Norman Leonard dated October 31, 1973.

The attached letter concluded with this paragraph:

Please acknowledge receipt in the place indicated on the enclosed copy of this letter which will also constitute satisfaction in full of the aforementioned Memorandum of Understanding, as well as the Order of Judge Wollenberg in the U. S. District Court case.

Mr. Leonard was thereby asked to sign the following statement which was appended to a copy of the original letter to Mr. Leonard and dated October 31, 1973:[3]

On behalf of ILWU, Local 34, the undersigned hereby acknowledges receipt of the sum of $10,290.00 in full satis-

2. The letter explained in detail how the amount of the check was computed and provided enough information for Mr. Leonard to determine that compensation for fringe benefits was not included in the check.

3. See Exhibit A attached to Supplemental Affidavit of Norman Leonard filed with Reply Brief in Support of Motion for Summary Judgment, January 2, 1974.

faction of all obligations under the Memorandum of Understanding of November 30, 1972 and the Order of the United States District Court in ILWU, Local 34 v. Cargill, Case No. C–73–0648 ACW, U.S.Dist.Ct.N.D.Cal. Executed at San Francisco, California this _____day of November, 1973.

Norman Leonard

The check was deposited in Mr. Leonard's trust account, and the acknowledgment drafted by Mr. Jackson neither signed nor returned. On November 7, 1973, Cargill was notified in writing that the ILWU would execute a release upon receipt of an amount equal to the value of fringe benefits the ILWU claimed is due. Exhibit 2 attached to Affidavit of Norman Leonard filed with Notice of Motion In Summary Judgment, November 16, 1973. Cargill now argues there has been a full accord and satisfaction of the Union's claim because the Union cashed a check which incorporated by reference an acknowledgment of full accord and satisfaction.

California Civil Code § 1521 determines when there has been an accord:

> An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled.

Since an accord is an agreement, unless the elements of an agreement are present there can be no accord. Under basic principles of contract law, Mr. Jackson's letter of October 31 constitutes an offer to settle the claim and designates signing and returning the acknowledgment of receipt on the copy of the letter as the manner of acceptance. By failing to sign and return the acknowledgment, Mr. Jackson's offer was rejected and, therefore, the statutory requirement of an agreement in order to perfect an accord and satisfaction was never reached. *See* 1 Witkin, Summary of California Law, Contracts § 704 (8th ed. 1973); 1 Corbin, Contracts § 67 at

275 (1963). Accordingly, the Court rejects Cargill's claim that there was an accord and satisfaction.

ORDER

This Court having studied the documents and written arguments submitted by the parties, and having considered the oral arguments of counsel for both parties, and for good cause shown,

It is hereby ordered that plaintiff's motion for summary judgment be, and hereby is, granted, and it is further ordered that summary judgment be entered in favor of the International Longshoremen's and Warehousemen's Union, Local 34.