In the Matter of RALPH GIANNETTINO et al., Appellants and Respondents, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, et al., Respondents and Appellants.

Argued November 30, 1945; decided March 7, 1946.

*Leopold V. Rossi* for petitioners-appellants-respondents. I. Provisions of the State Constitution and of the Labor Law, (§ 220), provide for the payment of not less than the prevailing rate of wage to laborers, workmen or mechanics. (*Matter of Meyer*, 209 N. Y. 386; *Austin* v. *City of New York*, 258 N. Y. 113; *Matter of Heaney* v. *McGoldrick*, 286 N. Y. 38; *McNulty*

v. *City of New York,* 238 N. Y. 29; *Gaston* v. *Taylor,* 274 N. Y. 359.) II. State laws never intended or contemplated that civil service employees should pay for their own vacations and for their own pensions. (*Matter of Wexler* v. *Dayton,* 255 App. Div. 567; *Matter of Meyer,* 209 N. Y. 386.) III. Petitioners are entitled to the prevailing rate of wage from January 1, 1938, to February 20, 1942, without any deductions. (*Campbell* v. *City of New York,* 291 N. Y. 461; *Matter of Rushford* v. *City of N. Y.,* 280 N. Y. 217; *Dixon* v. *La Guardia,* 277 N. Y. 84.) IV. Petitioners should be paid interest on the back-pay moneys illegally withheld from them by defendants.

*Ignatius M. Wilkinson, Corporation Counsel (Howard C. Fischbach* and *Francis J. Bloustein* of counsel), for defendant-respondents-appellants. I. The rates of wages fixed by the comptroller's determination are equal to the prevailing rates current in private employ, after deductions of the monetary value of vacation and pension benefits exclusively received by city employees. (*Matter of Watson* v. *McGoldrick,* 260 App. Div. 77, 286 N. Y. 47; *Matter of Mahon* v. *Bd. of Education,* 68 App. Div. 154, 171 N. Y. 263; *Schieffelin* v. *Berry,* 127 Misc. 178, 217 App. Div. 451, 243 N. Y. 603; *Kieran* v. *Hunter College Retirement Bd.,* 255 App. Div. 378.) II. Petitioners are not entitled to interest on prevailing rate claims since the statute (Labor Law, § 220) makes no provision therefore and because such claims are unliquidated and the amounts which may ultimately be found to be due are not readily ascertainable. (*Matter of Trustees of New York and Brooklyn Bridge,* 137 N. Y. 95; *Matter of Ittleman [City of New York],* 286 N. Y. 150; *Faber* v. *City of New York,* 222 N. Y. 255; *Finn* v. *City of New York,* 282 N. Y. 153.)

CONWAY, J. The petitioners, who are rakers, tampers, smoothers, top-shovelers and asphalt workers employed by the city, have appealed from an order of the Appellate Division, affirming as modified certain determinations of the Comptroller of the City of New York. The determinations involved here were entered March 9, 1945, and covered the period from October 1, 1937, to February 19, 1942. In order to indicate the manner in which the determination was made, we shall take a specific example. The comptroller first found that the prevailing rate of wages for asphalt workers, commensurately

employed in the city, was $.92 per hour for the period October 1, 1937, to September 30, 1939; $1.02 per hour for the period October 1, 1939, to September 30, 1941, and $1.12 per hour for the period October 1, 1941, to February 18, 1942. He then deducted the value of pension and vacation benefits of city employees, which he computed at 10% of the prevailing rates, and thus determined that the rates of wages payable to the petitioning asphalt workers were $.83 per hour, $.92 per hour and $1.01 per hour, respectively, for the periods mentioned above. He followed the same procedure in the case of the rakers, tampers, smoothers and top-shovelers.

In reaching the figure of 10%, the comptroller took into consideration the three weeks' vacation with pay granted petitioners, amounting to 3/52 of a year, or approximately 6%. To that he added the value of their benefits under the City's Retirement System by ascertaining the average share of the cost of its maintenance. He estimated that the average employee's contribution varied between 5% and 6% of his compensation. It would follow from that that the city's contribution, matching the employee's, would be measured in the same terms, i.e., 5% to 6%. The comptroller then added the 6% already computed for vacation pay to a minimum of 5% for retirement benefits, thus making a total of 11%. From that he deducted a 1% contribution made by privately employed asphalt workers to the Federal Social Security System, and thus arrived at a net deduction of 10%.

The city urges that failure to make such deduction would be in effect to grant petitioners additional compensation, but we think that is incorrect. The applicable statutes are as follows:

Labor Law, § 220. Hours and wages.

" 1. Eight hours shall constitute a legal day's work for all classes of employees in this state except those engaged in farm and domestic service unless otherwise provided by law.

\* \* \* \* \* \* \*

" 3. *The wages to be paid for a legal day's work,* as hereinbefore defined, to laborers, workmen or mechanics upon such public works, *shall be not less than the prevailing rate of wages as hereinafter defined.* (Emphasis supplied.)

\* \* \* \* \* \* \*

" 5-a. The ' prevailing rate of wages,' for the intents and purposes of this article, shall be the rate of wage paid in the

locality as hereinafter defined to the majority of workmen, laborers or mechanics in the same trade or occupation. In the event that it be determined that there is not a majority in the same trade or occupation paid at the same rate, then the rate paid to the greater number in such trade or occupation shall be the prevailing rate, provided such greater number constitutes at least forty per centum of the laborers, workmen or mechanics engaged in such trade or occupation; in the event there is less than forty per centum of the laborers, workmen or mechanics engaged in the same trade or occupation in the same locality paid the same rate, then the average paid to such laborers, workmen or mechanics in the same trade or occupation shall be the prevailing rate. Laborers, workmen or mechanics for whom a prevailing rate of wage is to be determined shall not be considered in determining such prevailing wage.''

Vacation pay and pension benefits are not gratuities. Pension annuities, after the expiration of the period of active service, are in the nature of compensation for the services previously rendered for which full and adequate compensation was not received at the time of the rendition of such services. They are in effect pay withheld to induce long-continued and faithful service. (*Matter of Mahon* v. *Board of Education,* 68 App. Div. 154, 156, affd. 171 N. Y. 263; *Hoyt* v. *County of Broome,* 285 N. Y. 402, 406. See, also, *Schieffelin* v. *Berry,* 127 Misc. 178, 182, affd. 217 App. Div. 451, affd. 243 N. Y. 603.) Moreover, the comptroller found the prevailing wages by hourly periods. It is clear that vacation pay and the city's contribution to the pension system are not " *wages to be paid for a legal day's work* " within the meaning of the statute quoted. The Legislature used the word " *wages* " for the money which was to be paid to laborers, workmen and mechanics by the city. It cannot be said that the Legislature intended the word to have the larger meaning of *compensation* or *payment.*

There is a cross appeal by the city from the allowance of interest by the Appellate Division. The petitioners urge that they are entitled to interest for the period from January 1, 1938, in addition to the interest allowed to them by the Appellate Division which ran from March 19, 1942, the date of the original determination by the comptroller, which was concededly erroneous and thus necessitated a new determination

which, as we have seen, was made on March 9, 1945. When the comptroller made his corrected determination, he fixed the rates as of three periods: (1) October 1, 1937, to October 1, 1939; (2) from October 1, 1939, to October 1, 1941; and (3) from October 1, 1941, to February 19, 1942. In connection with those dates, it is well to bear in mind that the budget of the city of New York provided for payment at the prevailing rate of wages for the period from January 1, 1938, to June 30, 1942. Prior and subsequent to that period the budget provided fixed sums as wages for men employed in occupations such as those of the petitioners. Therefore, when the comptroller made his corrected determination on March 9, 1945, he made it retroactive to January 1, 1938, so that it covered the period from January 1, 1938, to June 30, 1942. Thereupon, the comptroller offered the petitioners wages at the rates so determined by him, less the 10% for vacation and pension benefits. That the petitioners declined to accept. The question presented, then, is: from what date should interest run in favor of petitioners?

There is no language in the applicable sections of the Labor Law which provides that interest shall be allowed on the back wages found due, but interest should be paid when there has been a default by a person obligated to pay. (*Matter of Ittleman [City of New York]*, 286 N. Y. 150, 153.) Here the statute directs that petitioners receive as wages not less than the prevailing rate, and the comptroller by his determination decided what that prevailing rate was. From the date of entry of that determination the city became liable to pay such rate, at least to those petitioners who filed their complaints " commencing with October 1st, 1937 ", as alleged in their petition, and thus presumably prior to the date of the comptroller's determination (March 19, 1942). (*Campbell* v. *City of New York,* 291 N. Y. 461.) That was the date fixed by the Appellate Division from which interest was to run, and we think that was correct.

. The order of the Appellate Division should be reversed and the matter remitted to the Appellate Division for further proceedings not inconsistent with this opinion, without costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and MEDALIE, JJ., concur.

Ordered accordingly.