[No. 49195-0. En Banc. May 17, 1984.]

MICHAEL JAMES CRABTREE, ET AL, *Respondents,* v. THE DEPARTMENT OF RETIREMENT SYSTEMS, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Donald F. Cofer, Assistant,* for appellants.

*Bryan P. Harnetiaux, Judith Lonnquist,* and *Durning, Webster & Lonnquist,* for respondents.

ROSELLINI, J.—This case presents an issue of first impression concerning the interpretation of 1977 amendments to the Teachers' Retirement System (TRS). Laws of 1977, 1st Ex. Sess., ch. 293. Respondents, teachers in the Spokane school system, claim entitlement to the more favorable provisions of the preamendment retirement scheme. The trial court held in favor of the respondents. We affirm.

Appellants, Department of Retirement Systems and its director, administer nine public retirement systems, including the TRS. That system, created in 1947, is governed by the terms of RCW 41.32. In 1977, the Legislature substantially amended RCW 41.32. The new program was designed to reduce the system's future liabilities, thereby improving its actuarial soundness.

The original program, hereinafter designated as Plan 1, had significant advantages over the subsequent program, Plan 2. For instance, Plan 1 allowed a teacher to retire with full salary after 30 years' service. Under the terms of Plan

2, on the other hand, a teacher may still retire after 30 years' service but will not receive benefits until he reaches the age of 65.

The facts as to the two respondents are undisputed. Michael James Crabtree first worked for the Spokane school system during the 1976–77 fiscal year as a substitute teacher. During that year Crabtree worked 124.7 days on a daily, noncontract basis. Crabtree signed his contract to teach full time in the school system on August 8, 1977. Respondent Beuhler signed her contract with School District 81 on September 19, 1977.

Both respondents were thus initially employed by the school district before October 1, 1977. Similarly, both respondents had employee contributions for the retirement system deducted as of their first day of employment.

As Mr. Crabtree was generally aware of the different retirement programs available, he contacted school district officials and asked whether he belonged to Plan 1 or Plan 2. He was informed that he was enrolled in Plan 1. Respondent Beuhler apparently did not inquire as to her plan membership.

In the spring of 1980, respondents received a small refund check and a notice which stated that they had been assigned to Plan 2.

Respondents brought the present action to challenge their assignment to Plan 2. Judge Gerry Alexander found that the respondents were entitled to benefits under Plan 1 and ordered their reassignment to that plan. The Department appealed to Division Two of the Court of Appeals. We granted respondents' motion to transfer the appeal. We affirm.

We start, as did the trial judge, with the provisions of RCW 41.32. RCW 41.32.240 provides that all teachers, employed full time in the public schools, shall be members of the TRS. The statute also requires that a minimum of 90 days or its equivalent "shall be required to establish membership." RCW 41.32.240.

Prior to 1977, the 90–day membership provision appar-

ently had little significance unless the employee became disabled or died within that time. If that occurred the employee's contributions were refunded.

Following the passage of the 1977 amendments, however, the Department placed additional significance on the 90–day period. The Department relied on the 90–day membership period to exclude those individuals, employed prior to October 1, 1977, who had not achieved membership status as of that date. Respondents were among those affected by the Department's interpretation of the amendments.

Respondents argue first that the plain language of the statute requires their assignment to Plan 1. Their argument begins with the provisions of RCW 41.32.755. That section states that Plan 2 benefits, as described in RCW 41.32.760–.825, apply "only to those persons who are initially employed by an employer on or after October 1, 1977." RCW 41.32.755. Respondents then turn to the language of RCW 41.32.750. That section indicates that those members, first employed on or before September 30, 1977, "shall not suffer any diminishment or loss of benefits or rights, whether current or prospective, as a result of the enactment of this 1977 amendatory act." Respondents conclude that these sections mandate that the teacher's first day of full–time employment is determinative of whether the teacher will be subject to the amendatory provisions. The date of employment would thus determine also whether the teacher's pension benefits will be calculated under Plan 1 or Plan 2.

Appellants acknowledge that these sections suggest such a result. They urge, however, that several of the definitions contained in RCW 41.32.010, when combined with the legislative history of the amendatory act, require *membership* in the TRS prior to October 1 in order for an employee to obtain Plan 1 benefits. Appellants observe that the Department has always interpreted the 90–day employment requirement of RCW 41.32.240 as a threshold that must be met before membership is established in the TRS. *See* WAC 415–112–100. Appellants thus conclude that the Leg-

islature intended that a teacher establish membership prior to October 1, 1977, in order to qualify for Plan 1.

The trial judge rejected the legislative intent argument. He reasoned that if he adopted appellants' argument, he would have to ignore the specific statements contained in RCW 41.32.750 and .755.

The trial judge recognized, nonetheless, that the definitions cited by appellants seemed to contradict the plain terms of RCW 41.32.755. In an attempt to reconcile the apparent internal conflict contained in these statutes, Judge Alexander characterized the 90–day membership provision as a condition subsequent. Under his analysis, if a teacher, employed prior to October 1, 1977, successfully completed the 90–day period, the "state of membership would then relate back to the date of employment." Stipulation and Oral Decision, at 7. We find Judge Alexander's reasoning persuasive.

In addition, we find this result to be most consistent with general principles of pension law and the specific legislative provisions here at issue.

 The importance of pension rights is beyond dispute. Concerned by the need to protect employee rights in pensions, Congress passed the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1381 (Supp. 4, 1974). That act contains specific safeguards designed to protect these important benefits.

Furthermore, decades before the federal government acted in this area, our courts recognized the importance of pension benefits and applied our own safeguards. In *Bakenhus v. Seattle,* 48 Wn.2d 695, 698, 296 P.2d 536 (1956), we stated that "a pension granted to a public employee is not a gratuity but is deferred compensation for services rendered." In addition, *Bakenhus* quoted from a New York opinion that noted that pensions were in effect pay "'. . . withheld to induce long–continued and faithful service.'" *Bakenhus,* at 700 (quoting *Giannettino v. McGoldrick,* 295 N.Y. 208, 66 N.E.2d 57 (1946)). We expanded on this notion in *Tembruell v. Seattle,* 64 Wn.2d

503, 506, 392 P.2d 453 (1964) and observed that "the rights in and to it [the pension] commence to vest with the first day of employment or service, and continue to vest with each day's service thereafter."

Appellants dismiss *Tembruell* and the above language with the observation that it is dicta. Dicta or not, however, *Tembruell* recognized an important fact of retirement benefits. That is, pension benefits have traditionally been determined from the date of employment. The interpretation the trial judge gave these sections reflects that fact. The interpretation urged by the appellants does not.

Furthermore, as noted by the trial judge, this interpretation is necessary to give effect to RCW 41.32.750 and .755. If Plan 1 benefits were to apply to only those individuals who were members of the TRS on October 1, 1977, the Legislature would not have referred instead to the date of employment.

Finally, we are unpersuaded by appellants' reliance on the legislative history. Appellants admit "[t]he legislative history . . . offers no conclusive insight into the legislature's intent" on this matter. Brief of Appellants, at 17. Given the uncertainties involved in relying upon even clear legislative history, we are unwilling to rely upon legislative history which merely "suggests" an answer. Reason and justice here require the opposite result.

In conclusion, we hold that respondents are entitled to benefits under Plan 1.

The decision of the trial court is affirmed.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, and PEARSON, JJ., concur.

DORE, J. (concurring in part, dissenting in part)—I would have held that the 1977 law providing state pension for teachers who became employed on or after October 1, 1977, required a teacher to complete 90 days of service in the system before a teacher's membership could be established. Accordingly, I would reverse the trial court's decision to

assign teacher Beuhler to Plan 1 and reassign her to Plan 2. As to teacher Crabtree, I would affirm his assignment to Plan 1 on the basis he already had accumulated 90 days of service prior to October 1, 1977 by acquiring 124.7 days of service as a substitute teacher prior to October 1, 1977.

Both Crabtree and Beuhler became teachers and members of the Teachers' Retirement System at a time which would place them in pension Plan 2 which, generally, provided for benefits at a substantially reduced level than Plan 1.

The issue here is whether a teacher hired less than 90 days prior to October 1, 1977 can teach for 90 days, and relate such work experience retroactively back to his or her hiring date, in order to qualify for membership in the Washington retirement system as of the earlier date for purposes of becoming eligible for Plan 1.

### 90–DAY SERVICE REQUIREMENT

RCW 41.32.240 requires a teacher to complete 90 days of service before membership is established in the retirement system.[1] However, RCW 41.32.755 provides:

RCW 41.32.760 through 41.32.825 [Plan 2] shall apply only to those *persons* who are *initially employed* by an employer on or after October 1, 1977.

(Italics mine.) A literal reading of these two statutory provisions would result in a teacher, initially employed less than 90 days prior to October 1, 1977, being assigned to neither retirement plan.

The trial judge resolved this dilemma by characterizing the 90–day service requirement as a condition subsequent. Under his analysis, once a teacher completes 90 days of

---

[1] RCW 41.32.240 provides in part:

"All teachers employed full time in the public schools shall be members of the system except those who have previously exempted themselves from membership and alien teachers who have been granted a temporary permit to teach as exchange teachers.

". . .

"A minimum of ninety days or the equivalent of ninety days of employment during a fiscal year shall be required to establish membership."

service, the "state of membership would then relate back to the date of employment." Oral Decision, at 7. However, in reaching his conclusion, the trial judge admitted his uncertainty with the issue, noting with candor: "I think I've got frankly about a 50 percent chance of being reversed in this case, whichever way I went." Oral Decision, at 10.

The majority summarily affirms this "condition subsequent" analysis, and holds a teacher's initial employment date to be determinative of his assignment to Plan 1 or Plan 2. Today's holding revokes the clear intent of the Legislature and invades the province of the administrative agency responsible for administering the pension fund.

## CONDITION SUBSEQUENT

The majority applies its "condition subsequent" analysis for the sole purpose of giving effect to the language of RCW 41.32.755. However, the court must look to the statute as a whole, considering the relationship of all provisions to each other, in order to harmonize each provision and give effect to the legislative purpose. *Newschwander v. Board of Trustees,* 94 Wn.2d 701, 620 P.2d 88 (1980). The definitional section of the statute, RCW 41.32.010, consistently distinguishes the terms of Plan 1 from those of Plan 2 by reference to the date the individual teacher *established membership* in the system. For example, RCW 41.32.010(1) provides:

(a) "Accumulated contributions" for persons who *establish membership in the retirement system on or before September 30, 1977,* means the sum of all regular annuity contributions with regular interest thereon.
(b) "Accumulated contributions" for persons who *establish membership in the retirement system on or after October 1, 1977,* means the sum of all contributions standing to the credit of a *member* in the *member's* individual account together with the regular interest thereon.

(Italics mine.)

The majority's decision gives effect to one statutory provision and nullifies both the 90–day service requirement of RCW 41.32.240, and the Legislature's pervasive reference to

*membership* in the system as the determinative criterion for a teacher's assignment to a particular retirement plan.

The legislative history of the 1977 amendments confirms that the date of membership was intended to determine a teacher's assignment to Plan 1 or Plan 2. The amendments were initially introduced in the House of Representatives on February 17, 1977 as House Bill 866 which was entitled:

> AN ACT Relating to public employment; revising the teachers' retirement system with respect to persons *entering as members* on or after July 1, 1977; adding a new chapter to Title 41 RCW to be designated as chapter 41.32A RCW; adding a new section to chapter 41.32 RCW; defining crimes; providing penalties; and prescribing an effective date.

(Italics mine.) House Journal, 45th Legislature (1977), at 328. The bill was later modified, and Substitute House Bill 866 initially passed the House of Representatives on April 21, 1977. House Journal, at 980. On May 31, 1977, the Senate adopted substantial amendments to the House version. Senate Journal, 45th Legislature (1977), at 2134–44. Final passage of the bill was delayed until June 17, 1977. House Journal, at 2094; Senate Journal, at 2763–77. Throughout the entire amendatory process, the definitional section, codified at RCW 41.32.010, consistently distinguished between Plan 1 and Plan 2 by reference to the date a teacher *established membership* in the system. At no time in the entire legislative process did anyone refer to a teacher's date of employment as determinative of assignment to Plan 1 or Plan 2.

ESTABLISHING MEMBERSHIP IN RETIREMENT SYSTEM

The Department of Retirement Systems, charged with the responsibility of administering the Teachers' Retirement System, has traditionally determined a teacher's assignment to a retirement plan by the date the teacher established membership in the system under the 90–day rule.[2] The Department policy was effectuated after consul-

---

[2] WAC 415–112–100 provides:

tation with the Attorney General. AGO 8 (1980) provides at page 3:

> The Washington Teachers' Retirement System is, of course, one of those "other" public retirement systems. We further should note that . . . it now encompasses two separate pension plans. Plan I covers all "teachers" employed full time in the "public schools" (as those two terms are defined in RCW 41.32.010(30) and (23), respectively) whose membership was initially established prior to October 1, 1977, on the basis of employment on or before July 1, 1977. Accord, RCW 41.32.240. *Plan II, in turn, covers all "teachers" employed by an "employer" (as defined in RCW 41.32.010(12)) who initially established membership on or after October 1, 1977.*[1]

(Italics mine.) Footnote 1 to the opinion provides:

> [1]Throughout this opinion we will use this criteria of *when membership was established* to distinguish between Plan I and Plan II members of TRS. We are aware that RCW 41.32.755 and .780 actually speak of *employment* on or after October 1, 1977, as the basis for Plan II membership. At the same time, RCW 41.32.005 states that the earlier, Plan I, sections of chapter 41.32 RCW ". . . shall apply only to those persons who establish membership in the retirement system on or before June 30, 1977." And, under RCW 41.32.240, *supra,* one must have been employed as a teacher for at least ninety days in order to become a member of the system. Accordingly, if the literal wording of the statutes were to be followed, those persons first employed as teachers after April 1, 1977 (less than ninety days before June 30, 1977) but before October 1, 1977 would be covered by neither TRS plan. *Cf.,* AGLO 1977 No. 37. We have, therefore, informally counselled you in the past to avoid that obviously unintended result by applying Plan I to all those who, on the basis of employment on or before July

---

"Ninety calendar days of employment within a fiscal year as a full–time teacher, or the equivalent of ninety days of service within a fiscal year as a teacher employed on a part–time, occasional, hourly, or daily basis, shall be required, together with necessary contributions, before membership in the teachers' retirement system is established and before the director may approve an application for cancellation of exemption, for the granting of additional credit for previous service, or for the payment of any benefit."

1, 1977, established TRS membership prior to October 1, 1977.

(First italics mine.)

This construction effectuates the purpose of the 1977 amendments by reducing the future liabilities of the Teachers' Retirement System and enhancing its actuarial soundness. The interpretation given to a statute by the agency responsible for its administration is entitled to great weight. *Newschwander v. Board of Trustees.* Unfortunately, the majority opinion ignores the policy of the Department and overrules the legislative purpose by misplacing some 1,680 teachers under Plan 1 (Report of Proceedings, at 93), and unjustly increasing by millions of dollars the future liabilities of the teachers' pension fund, jeopardizing the actuarial soundness of the fund.

## History

Legislative amendments to the Teachers' Retirement System passed since 1977 provide even more compelling reasons for this court to adopt the interpretation given by the Department. The definitional section of the statute was amended by Laws of 1979, 1st Ex. Sess., ch. 249, § 5(28)(b), p. 2009 to read in part:

> Notwithstanding RCW 41.32.240, teachers covered by RCW 41.32.755 through 41.32.825 [Plan 2], who render service need not serve for ninety days to obtain membership so long as the required contribution is submitted for such ninety–day period. Where a member did not receive service credit under RCW 41.32.775 through 41.32.825 due to the ninety–day period in RCW 41.32.240 the member may receive service credit for that period so long as the required contribution is submitted for the period. Anyone *entering membership on or after October 1, 1977,* and prior to July 1, 1979, shall have until June 30, 1980, to make the required contribution in one lump sum.

(Italics mine.)

Dr. Hollister, Director of the Department of Retirement Systems, stated that he was actively involved in the passing of this 1979 amendatory legislation, and that the legislators

were well aware of the criterion the Department used to assign teachers to a particular retirement plan. He testified as follows:

"A. We proposed a bill to the legislative leadership with which we customarily worked, which would be the House Subcommittee on Pensions of the Appropriations Committee, chaired through '78 by Representative Bauer and in the '79 session jointly by Representatives Taller and Douthwaite. I worked extensively with those gentlemen and in the Senate with Senator Mardesich prior to the '79 session and subsequently, at that time and later, with Senators Jones, Scott and Marsh.

"These people were all informed of the problems that we had encountered with the bill as they passed it. They were fully informed as to the Plan I/Plan II decision that had been made and how we were implementing it. They were fully informed as to the effect of the no service credit for the 90 days, and based on the reaction that I perceived from them, we introduced a bill only proposing to change the part relating to the 90–day service credit.

"Q. So it was your impression that at least those members of the community were well aware that these teachers had been assigned to Plan II?

"A. They were well aware of it, both from me and from constituent letters they had received."

Report of Proceedings, at 36–37.

In 1982, the Legislature passed additional amendments to the definitional section of RCW 41.32. Again, Plan 1 and Plan 2 were distinguished by reference to the date a teacher *established membership* in the system. Laws of 1982, 1st Ex. Sess., ch. 54, § 3(2). Where the Legislature has subsequently amended a statute and failed to repudiate an administrative interpretation thereof, the agency's position merits even greater weight. *Green River Comm'ty College v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 622 P.2d 826 (1980), *modified,* 95 Wn.2d 962, 633 P.2d 1324 (1981); *Newschwander v. Board of Trustees.*

Moreover, an amendment to the 90–day service requirement of RCW 41.32.240 was introduced in the 1980 legisla-

tive session. House Journal, 46th Legislature (1980), at 98. House Bill 1726 would have given specific statutory authority for the interpretation adopted by the trial court and the majority. The bill provided in part:

A minimum of ninety days or the equivalent of ninety days of employment during a fiscal year shall be required to establish membership: PROVIDED, That a teacher who has commenced a period of employment after June 30, 1977, but before October 1, 1977, and who became a member of the system during the period of employment shall be deemed to have established membership on the date the period of employment commenced.

The bill died in committee. Dr. Hollister's testimony makes it clear that the Legislature was fully aware of the Department's policy of enforcing the 90-day service requirement by assigning those teachers initially employed between July 1 and October 1, 1977 to Plan 2. The Legislature's rejection of House Bill 1726 is strong evidence that it did not want teachers who had not served 90 days prior to October 1, 1977 to have the benefits of Plan 1. *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 123, 641 P.2d 163 (1982).

### BAKENHUS DOES NOT APPLY

The majority insists its decision is compelled by the vested rights doctrine set forth in *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956) and *Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964). We are not concerned, in this case, with the problem of a teacher being denied his vested rights to pension benefits. Rather, we are called on to determine *when* the teacher's pension rights vested. The Legislature plainly instructs us that a teacher must serve 90 days before he becomes a member of the retirement system and his pension rights vest. RCW 41.32.240. The majority's holding effectively renders this legislatively mandated 90-day service requirement null and void. *Bakenhus* is not relevant to this issue.

## Conclusion

I would uphold the policy of the Department of Retirement Systems which enforces the 90–day service requirement for teachers who were initially employed between July 1 and October 1, 1977 to establish membership in the retirement system. This harmonizes with the legislative intent manifested in the language and history of RCW 41.32. Moreover, this policy and amendatory pension law for teachers substantially contributes to the actuarial soundness of the Teachers' Retirement System.

I would affirm the trial court's decision assigning plaintiff Crabtree to Plan 1. The record reflects that Crabtree had completed 124.7 days of service as a substitute teacher prior to October 1, 1977. He, therefore, qualified for membership in the Teachers' Retirement System under Plan 1. Beuhler was initially hired as a teacher in September 1977. She had not completed 90 days of service prior to October 1, 1977. I would reverse the trial court's decision regarding Beuhler and reinstate the Department's order assigning her to Plan 2.

The Legislature, through the passage of House Bill 866, as illustrated in the Senate Journal, never intended that the 90–day service requirement for teachers to establish membership in the retirement system, should be waived for those teachers who were employed between July 1 and October 1, 1977. This waiver completely defeats the legislative intent of a cutoff date of October 1, 1977 for teachers who had qualified by working 90 days in service as of that date. As a result, an estimated 1,680 teachers will receive benefits under Plan 1 rather than Plan 2, at an expense of millions of dollars to the fund. The majority gives a windfall to some 1,680 new teachers but, simultaneously, jeopardizes and weakens the actuarial soundness of the teachers' retirement fund for the other 40,000 teachers in our state. The majority decision defeats House Bill 866's purpose.

UTTER, DOLLIVER, and DIMMICK, JJ., concur with DORE, J.