42 P.3d 992 (2002)
110 Wash.App. 582
CITY OF PASCO, a Washington municipal corporation, Appellant,
v.
DEPARTMENT OF RETIREMENT SYSTEMS, an agency of the State of Washington, and Cary Don Andres, Respondents.
No. 26642-3-II.
Court of Appeals of Washington, Division 2.
March 22, 2002.
*993 Greg Alan Rubstello, Ogden Murphy Wallace, PLLC, Seattle, for Appellant.
Jerome E. Westby, Assistant Attorney General, Olympia, for Respondent Dept. of Retirement Systems.
Cary Don Andres, Pro se Respondent.
HUNT, J.
The City of Pasco Fire Department (the City) seeks review of the Department of Retirement Systems' (the Department) Final Order and the subsequent trial court ruling that affirmed the retroactive transfer of Cary D. Andres' retirement benefits from Plan 2 to Plan 1 of the Law Enforcement Officers' and Fire Fighters' retirement system (LEOFF). We affirm.[1]

FACTS[2]

I. ENROLLMENT IN LEOFF PLAN 1
The City employed Andres as a fire fighter on June 5, 1974. He was enrolled in LEOFF (Plan 1) and began paying contributions into this retirement system, subject to being certified as having met minimum medical and heath standards.[3]
In July 1974, Dr. R.H. Moore performed Andres' LEOFF medical examination. Andres' medical history revealed past "troubles" or "symptoms" with his back. Dr. Moore noted that Andres had spondylolisthesis,[4] which was not symptomatic at the *994 time of the examination. Dr. Moore gave "qualified approval" for Andres' employment, stating:

This young man must be given a qualified approval for employ. He has a spondylolisthesis. In his favor is that he has had only one episode of trouble six years ago and is a young, muscular male who does his work without difficulty and has a normal range of back motion. However, he does have an increased chance for back trouble and some companies would not hire him with this condition.
Administrative Record (AR) at 137 (emphasis added). One month later, in August 1974, Dr. Moore retracted his "qualified approval" of Andres' LEOFF qualification, stating that "because Mr. Andres had spondylolisthesis he did not meet the minimum medical and health standards for a fire fighter." AR at 137-38.
Based on Dr. Moore's revised statement, the Department determined that Andres was not eligible for LEOFF membership because of his spondylolisthesis. Consequently, on August 20, 1974, Andres ceased employment as a fire fighter with the City, which refunded his LEOFF (Plan 1) contributions. The Department deleted its computer record of Andres' fire fighter employment from its database and archived the paper record of his initial enrollment in LEOFF (Plan 1).

II. ENROLLMENT IN LEOFF PLAN 2
Four years later, in June 1978, Andres reapplied to the City for employment as a fire fighter and submitted to a second medical examination, performed this time by Dr. Lewis G. Zirkle. Dr. Zirkle noted that although Andres had a history of spondylolisthesis, his past x-rays showed that this condition had not changed over the past four to five years. In both 1974 and 1978, Andres' spondylolisthesis was asymptomatic and had been for several years. This condition did not interfere with his ability to do the full range of duties required of a City fire fighter. Dr. Zirkle concluded that Andres was qualified for employment as a fire fighter.
Based on Dr. Zirkle's examination, the City rehired Andres as a fire fighter. Again, Andres became a contributing member of LEOFF. But this time he was enrolled in the less favorable LEOFF Plan 2.
Andres explained that he had been a member of LEOFF Plan 1 in July 1974 and requested reinstatement in that plan. But the Department had not retained a record of his previous employment and Plan 1 membership. Consequently, Andres was enrolled in the less favorable Plan 2. See Conclusion of Law No. 5, Exhibit 7, AR at 138. Nonetheless, he continued his employment as a fire fighter with the City.

III. REINSTATEMENT IN LEOFF PLAN 1
On May 3, 1998, Andres again asked the Department to enroll him in LEOFF Plan 1. Exhibit 6. This time, the Department granted his request, reasoning that because the minimum medical and health LEOFF standards had not required Andres' rejection in 1974, he met the standards then and, thus, he had been entitled to LEOFF Plan 1 membership in 1974. The Department concluded that (1) the City had erred in rejecting Andres' LEOFF eligibility in 1974, (2) the City had wrongly excluded Andres from LEOFF coverage in 1974, and (3) Andres should be reinstated in LEOFF Plan 1. AR at 144.

IV. APPEALS
The City petitioned the Department for a re-determination of Andres' LEOFF Plan 1 eligibility. The Department denied the City's request. The City appealed to the Department Director, who affirmed the decision in a Final Order granting Andres' membership in LEOFF Plan 1.
The City then appealed to Thurston County Superior Court, which affirmed the Department's final order. The City now appeals to us.

ANALYSIS
The Department is charged with (1) administration and management of the Law Enforcement Officers' and Fire Fighters' Retirement System and (2) responsibility for implementing the provisions of Chapter 41.26 RCW. The Department has authority to decide *995 all questions relating to LEOFF eligibility.[5]
In 1971, the Legislature amended the LEOFF retirement system by creating LEOFF Plan 2. LEOFF Plan 1 continued to cover persons who had established membership before October 1, 1977. RCW 41.26.030(28). LEOFF Plan 2 covers persons who established membership on or after that date. RCW 41.26.030(29).[6]

I. STANDARD OF REVIEW
The Administrative Procedures Act (APA) governs judicial review of a Department decision. RCW 34.05.570(1)(a). We review the Department's determination of Andres' LEOFF Plan 1 membership de novo on the administrative record before the Department. See Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 323-25, 646 P.2d 113 (1982). Courts give substantial weight to an agency's interpretation of the law it administers. Grabicki v. Dep't of Ret. Sys., 81 Wash.App. 745, 752, 916 P.2d 452 (1996) (Department of Retirement Systems' interpretation of LEOFF statutes entitled to considerable weight). Nonetheless, the agency's interpretation is not binding on the courts. Bowers v. Pollution Control Hearings Bd., 103 Wash.App. 587, 596, 13 P.3d 1076 (2000).
RCW 34.05.370(3) sets forth nine grounds for granting relief from the Department's Final Order, only two of which pertain here: (1) "The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law"; and (2) "[t]he agency has erroneously interpreted or applied the law; ..." RCW 34.05.570(3)(b) and (d), respectively. The City bears the burden of showing that the Department's Final Order was invalid. RCW 34.05.570(1)(a). We agree with the trial court that the City has not met this burden.

II. MEMBERSHIP IN LEOFF PLAN 1
The City concedes that (1) Andres was employed as a fire fighter before October 1, 1977, and (2) Andres was medically eligible to be a fire fighter in 1974 and 1977. Instead, the City underscores that Andres lacked contemporaneous certification of his eligibility.
The City argues that membership in LEOFF Plan 1 requires more than mere employment as a fire fighter before October 1, 1977. The City contends that Andres is not entitled to LEOFF Plan 1 benefits because (1) he was not certified as meeting the minimum LEOFF medical and health standards until 1978, a year after the cut-off date for LEOFF Plan 1 enrollment; and (2) he did not become a LEOFF Plan 1 member before October 1, 1977, as required by RCW 41.26.030(28).
Thus, the issue here is whether Andres' claim fails because his 1974 LEOFF Plan 1 eligibility was not certified[7] before October 1, 1977, the cut-off date separating enrollment in Plan 1 from enrollment in Plan 2. We hold that the lack of certification before the cut-off date did not prevent the Department's retroactive enrollment of Andres in LEOFF Plan 1.

A. THE DEPARTMENT'S CORRECTION OF ERRORS
The City argues that the Department lacked authority to change Andres' retirement *996 system enrollment after the October 1, 1977 cut-off date.

1. Authority
RCW 41.50.130, the "correction of error" statute, unambiguously gives the Department Director authority to correct errors appearing in the records of any state retirement system that cause members or beneficiaries to receive more or fewer benefits than those to which they are entitled:
(1) The director may at any time correct errors appearing in the records of the retirement systems listed in RCW 41.50.030. Should any error in such records result in any member, beneficiary, or other person or entity receiving more or less than he or she would have been entitled to had the records been correct, the director, subject to the conditions set forth in this section, shall adjust the payment in such a manner that the benefit to which such member, beneficiary, or other person or entity was correctly entitled shall be paid in accordance with the following:
(a) In the case of underpayments to a member or beneficiary, the retirement system shall correct all future payments from the point of error detection, and shall compute the additional payment due for the allowable prior period which shall be paid in a lump sum by the appropriate retirement system.
RCW 41.50.130. Accord, Appeal of Ryder, DRS Case No. 94-L-7420 (February 15, 1994). AR at 141.
This statute does not limit correctable errors to reporting or other specific types of errors. There is no qualifying or limiting language before the word "errors" in the statute. Therefore, under the language of RCW 41.50.130, the Department correctly concluded that it is authorized to correct records that erroneously showed Andres as a LEOFF Plan 2 member with a July 1978 entry date.

2. No Time Bar
The City argues that the RCW 4.16.080 three-year statute of limitations for civil actions filed directly in court[8] prevented the Department from enrolling Andres in LEOFF Plan 1 in 1978. But this statute does not apply to administrative actions to correct LEOFF benefits. Rather, RCW 41.50.130 empowers the Department "at any time" (1) to make whatever changes are *997 necessary to retirement system members' files to insure that the Legislature's membership eligibility criteria are enforced and (2) to correct errors that result in a member receiving fewer benefits than those to which they are entitled. RCW 41.50.130(1).
Here, but for the Department's incorrect medical information about Andres' LEOFF eligibility in 1974, Andres would have continued his retirement coverage under LEOFF Plan 1 from his original 1974 date of employment forward, and the Department records would have so reflected. Andres' 1977 medical evaluation and re-employment provided him with proof that the 1974 medical information had been incorrect. In 1998, the Department corrected its records to show that Andres was entitled to LEOFF Plan 1 membership as of June 1974.

B. HARMONIZING MULTIPLE STATUTES
The City argues that RCW 41.26.030(28) (pre-October 1, 1997 Plan 1 membership cut-off) and RCW 41.26.045 (LEOFF health standards "certification" for membership) conflict with the Department's interpretation of RCW 41.50.130(l) to allow retroactive correction of an error. Br. of Appellant at 7-9. The City further argues that this statutory conflict is "entirely self-created by the [Department] in its attempt to utilize RCW 41.50.130 to modify membership determinations made 20 years and 24 years earlier." Reply Br. of Appellant at 8. We disagree.
When two statutes appear to conflict, we try to harmonize their respective provisions. Dep't of Labor & Indus. v. Kantor, 94 Wash.App. 764, 781, 973 P.2d 30 (1999), citing State v. Lessley, 118 Wash.2d 773, 781, 827 P.2d 996 (1992), and Martin v. Triol, 121 Wash.2d 135, 148, 847 P.2d 471 (1993). Here, the Department applied and harmonized three statutes when it corrected Andres' LEOFF membership.
First, RCW 41.26.045 requires that individuals meet certain health standards to qualify for LEOFF coverage.[9] Here, it is undisputed that Andres met these standards in 1974. Second, RCW 41.26.030(28) and (29), respectively, established an effective date to end LEOFF Plan 1 and established LEOFF Plan 2 for new employees after October 1, 1977. Here, the City terminated Andres' provisional LEOFF Plan 1 coverage in 1974 because a physician's report erroneously concluded that he did not meet applicable LEOFF health standards. Third, RCW 41.50.130 authorizes the Department at any time to correct errors in its records that affect benefits. Here, the Department did not discover its error concerning Andres' Plan 1 eligibility until after the October 1, 1977 cut-off date.
RCW 41.26.045's purposeto ensure that LEOFF members meet the LEOFF health standards[10]is served here, where it is undisputed that Andres met those health standards when he became employed as a fire fighter both in 1974 and 1978. Nothing in RCW 41.26.045 requires that LEOFF health certification occur at a certain time. What is critical is that the fire fighter meet the standards when he or she becomes employed as a fire fighter.[11]
*998 In Crabtree v. Dep't of Ret. Sys., 101 Wash.2d 552, 556-57, 681 P.2d 245 (1984), the Supreme Court rejected the Department's argument that a teacher must establish his eligibility before the October 1, 1977 cut-off for membership in a teachers' retirement Plan 1. The teachers were hired before October 1, 1977, but they did not fulfill the retirement Plan 1 requirement of 90 completed teaching days until after October 1, 1977. The Crabtree court concluded that the 90-day teaching requirement was a condition subsequent, which when completed, related back to the pre-October 1, 1977 date of employment. Thus, Crabtree allowed members to qualify for Plan 1 after the cut-off date, even though the teachers did not establish membership eligibility before October 1, 1977.[12]
Similarly, Andres was not "certified" as having met the LEOFF health standards until after October 1, 1977, even though he had met the requisite health standards before the cut-off date. Under Crabtree, the Board acted within its authority in allowing Andres' post-October 1, 1977 certification of eligibility to relate back to his 1974 employment. The Department's retroactive certification of Andres for Plan 1 eligibility does not nullify or diminish RCW 41.26.030(28)'s establishment of a cut-off date for Plan 1 because (1) Andres met the criteria for LEOFF Plan 1 membership before the effective date of Plan 2, and (2) the only reason the Department terminated his provisional Plan 1 enrollment in 1974 was Departmental error.

C. ADMINISTRATIVE REMEDIES
The City also contends that RCW 41.26.211,[13] or its predecessors, applied and required that Andres appeal and request a hearing to challenge the Department's denial of Plan 1 certification in 1974. Br. of Appellant at 7. The City argues that Andres accepted the Department's 1974 LEOFF ineligibility determination and allowed the time for appeal to pass; therefore, his tardy 1998 request for transfer from Plan 2 to Plan 1 was invalid. Br. of Appellant at 7-9. The facts and law do not support these contentions.

1. No Notice of Appeal Requirement Given to Andres in 1974
The Department's 1974 letter informing Andres of his LEOFF ineligibility did not indicate that it was a "final decision" that he must appeal by requesting a hearing. Nor did the letter contain information regarding his appeal rights.

2. Andres' 1998 Challenge to Plan 2 Enrollment
Moreover, Andres did appeal denial of his request for LEOFF Plan 1 enrollment when he wrote to the Department in May 1998, requesting transfer of his retirement benefits to LEOFF Plan 1. To qualify for membership *999 in LEOFF Plan 1, Andres must have been employed as a full-time, fully compensated, fire fighter before October 1, 1977. See RCW 41.26.030(4) (defining "fire fighter"). He must also have met the minimum medical and health standards.[14] He met these qualifications in 1974.
Under the minimum medical and health standards in effect at the time of Andres' original employment in 1974, spondylolisthesis was a cause for rejection of LEOFF Plan I membership only if it was "symptomatic or... likely to interfere with performance of duty or ... likely to require assignment limitations." See WAC 415-104-700, supra. AR at 141. But at the time of his 1974 medical examination by Dr. Moore, Andres' spondylolisthesis was asymptomatic. Moreover, Dr. Moore did not conclude that this condition was likely to interfere with Andres' performance of duties, nor did he find that it was likely to require assignment limitations.
Nonetheless, Dr. Moore assumed that the condition of spondylolisthesis alone, verified by x-ray findings, was sufficient under the minimum medical and health standards to require Andres' rejection from LEOFF employment. AR at 141. This erroneous assumption caused the Department wrongfully to deny Andres LEOFF membership in 1974,[15] which in turn caused his employment as a City fire fighter to end.
The City rehired Andres in 1978, following a second medical exam, correct assessment of his medical health status, and physician's certification that Andres qualified for LEOFF membership.

3. Timeliness
RCW 41.26.21's time limit for appeal does not apply to Andres because he did not seek judicial review of a Department decision.[16] Rather, the City sought judicial review of the Department's decision to reinstate Andres to LEOFF Plan 1. Andres simply sent a letter to the Department asking for a review of his LEOFF Plan I eligibility, which ultimately prompted the Department to revive his membership in LEOFF Plan 1 retroactively. Thus, Andres did not violate the RCW 41.26.211 time limit because it did not apply to him.
Moreover, as we have previously stated in this opinion, the Department may correct a flawed eligibility determination "at any time," whether it does so on its own initiative or at the request of an enrollee such as Andres.[17] The Department is obligated to *1000 administer the LEOFF retirement system carefully and correctly in full compliance with Chapter 41.26 RCW and its own rules implementing this authorizing legislation.
Andres was entitled to LEOFF Plan 1 membership in 1974. But he was wrongfully excluded because Dr. Moore misapplied the pre-employment medical standard, and the Department incorrectly relied on that recommendation. Had these errors not occurred, Andres would have been correctly admitted to LEOFF Plan 1 in 1974.[18] Accordingly, the Department lawfully corrected the error.
Affirmed.
We concur: BRIDGEWATER, J., and ARMSTRONG, C.J.
NOTES
[1] The City also assigns error to the Department's statutory award of attorney fees against the City. The City, however, provided no argument for this assignment of error; therefore, we do not address it.
[2] The City concedes that the Department's Findings of Fact should be considered verities on appeal. See Davis v. Dep't of Labor and Indus., 94 Wash.2d 119, 123, 615 P.2d 1279 (1980).
[3] The Legislature authorized the Department to adopt minimum medical and health standards that a fire fighter must meet before becoming a member of LEOFF. See RCW 41.26.045 and WAC 415-104-500. WAC 415-104-510 governs the pre-membership, qualifying medical examination.
[4] Spondylolisthesis is defined as:

the degeneration or deficient development of the articulating part of the vertebrae.... Spondylolysis is more common in persons who participate is sports such as diving, weight lifting, wrestling and gymnasticsactivities that require repetitive hyperextension.
In combination with other factors, spondylolysis may permit forward slippage of one vertebra on the one below, producing a spondylolisthesis. This occurs most commonly at the last lumbar vertebra (L5) causing it to slip on the first sacral vertebra (S1).
Many young persons with spondylolysis and spondylolisthesis may have no symptoms. Persons often develop symptoms during the preadolescent growth spurt. Magnitude of symptoms does not always correlate with the severity of slip.
Many persons require no treatment for the condition. Persons with spondylolysis or low-grade spondylolisthesis may be managed conservatively without surgery....
MediFocus MedCenter, MediFocus Guide for Spondylolisthesis (RT015), at http://ontheweb.bizhosting.com/DirectoryService/ MediFocusMed Center/RT015.HTM. See also STEDMAN'S MEDICAL DICTIONARY, 1656 (26th ed.1995).
[5] The Legislature created LEOFF in 1969 as a comprehensive benefits plan for Washington State police officers and fire fighters. Its fundamental purpose is "to provide benefits to police officers and fire fighters upon their disability or retirement and to their dependents upon their disability or death." See Hunter v. Dep't of Labor Indus., 19 Wash.App. 473, 475, 576 P.2d 69 (1978), citing RCW 41.26.020 and Hanson v. Seattle, 80 Wash.2d 242, 245, 493 P.2d 775 (1972). See also Fray v. Spokane County, 134 Wash.2d 637, 952 P.2d 601 (1998).
[6] LEOFF Plan 2 is a less generous retirement system than LEOFF Plan 1. See Appeal of Zimmerman, DRS Case No. 93-P-004 (March 3, 1995); Appeal of Koontz, DRS Case No. 97-L-006 (September 10, 1998). AR at 139.
[7] RCW 41.26.045, in effect in 1974, stated in pertinent part:

(l) Notwithstanding any other provision of law after February 19, 1974, no law enforcement officer or fire fighter, may become eligible for coverage in [LEOFF], until the individual has met and has been certified as having met minimum medical and health standards.
See Laws of 1974, 1st Ex.Sess., ch. 120, § 8.
[8] The cases that the City cites do not support its argument: Luellen v. Aberdeen, 20 Wash.2d 594, 148 P.2d 849 (1944), Helgeson v. Marysville, 75 Wash.App. 174, 881 P.2d 1042 (1994), Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 847 P.2d 440 (1993). These cases are civil court actions that applied the three-year limitations period of RCW 4.16.080. None involved application of RCW 4.16.080 to an administrative matter such as the one here.

In Luellen v. Aberdeen, the court determined that a policeman's action for reinstatement against the employer-city was, in effect, a mandamus action, which had all of the elements of a civil action. Luellen, 20 Wash.2d at 600, 148 P.2d 849. The court concluded that Luellen's action was subject to RCW 4.16.080's predecessor statute because Luellen's employer had allegedly invaded his right to acquire a pension. Luellen, 20 Wash.2d at 604, 148 P.2d 849. Unlike Luellen, Andres' case does not involve a superior court civil action.
In Helgeson v. Marysville, a former fire fighter brought a superior court action against his employer, the City of Marysville, to set aside a settlement agreement concerning Helgeson's claim for LEOFF disability retirement. Helgeson agreed as part of that settlement to waive his claims for medical services under the LEOFF statute. Helgeson, 75 Wash.App. at 176-80, 881 P.2d 1042. Helgeson argued that there was no statute of limitation on his claim because the LEOFF statute that provides for medical benefits did not contain a limitation provision. The court rejected this argument and instead applied the three-year limitation period in RCW 4.16.080, relying on Bowles. Similar to the Bowles plaintiffs, Helgeson claimed that his right to LEOFF benefits had been violated. The court held, however, that such claims must be filed within three years of retirement. Helgeson, 75 Wash.App. at 185-86, 881 P.2d 1042.
In Bowles, retired members of the Public Employees' Retirement System Plan I (PERS I) filed a civil action against the Department in superior court, seeking declaratory and injunctive relief. They alleged that the Department had breached their pension rights by improperly calculating their retirement pensions. Bowles, 121 Wash.2d at 57, 60, 847 P.2d 440.
Unlike Helgeson and Bowles, the present case does not involve a court civil action claiming breach of pension-related benefits. Rather, this case involves the City's appeal to the court of the Department's correction of an error in its records and Andres' LEOFF membership under RCW 41.50.130.
[9] The statute's purpose is to safeguard the integrity and actuarial soundness of the LEOFF retirement system. Laws of 1971, 1st Ex.Sess., ch. 257, § 1. The phrase "[n]otwithstanding any other provision of law" was added to the first sentence of RCW 41.26.045 in 1974, when the Legislature changed the effective date of the LEOFF health standards from May 21, 1971, to the effective date of the 1974 amendments. Laws of 1974, 1st Ex.Sess., ch. 120, § 8.
[10] WAC 415-104-500 states in pertinent part:

The regulations ... are adopted as the [MMHS] which must be met or exceeded before a law enforcement officer or fire fighter may become a member of [LEOFF] ... The minimum medical and health standards are not hiring standards. They relate only to membership in the LEOFF system.
WAC 415-104-700:
The following conditions of the spine and sacroiliac joints are causes for rejection of membership:
. . . .
(8) Spondylolyssis [sic] or spondylolisthesis that is symptomatic or is likely to interfere with performance of duty or is likely to require assignment limitations.
[11] The City also argues that State Attorney General Opinion No. 30 (1971) supports its argument under RCW 41.26.045 and RCW 41.26.030(28) that Andres' Plan 1 eligibility was not timely "certified." AGO No. 30 addresses only whether a person who could not meet the LEOFF health standards was prohibited from being employed as a deputy sheriff and, if not, whether PERS would apply to that deputy sheriff. In answering those questions, the opinion merely states that those who do not meet and have not been certified as having met the LEOFF health standards are not members of LEOFF, but instead are members of PERS.

Not only does this AGO not comport with the facts here, but also it does not control our decision. Attorney General Opinions are not binding on the court and we may disregard them. Davis v. King County, 77 Wash.2d 930, 934, 468 P.2d 679 (1970); Kasper v. Edmonds, 69 Wash.2d 799, 420 P.2d 346 (1966).
[12] See also Appeal of Graude, DRS Case No. 92-PL-008 at 1-2 (October 24, 1996): A fire fighter was first employed at age 37 in 1976. At the time of his employment, the maximum allowable age for entering LEOFF Plan 1 member was 35. In 1983, that standard was raised to age 45.

In 1990, Graude petitioned the Department for membership in LEOFF Plan 1. The Department denied his petition, concluding (among other things) that he had not established that he met the minimum medical and health standards in effect in 1976. Following an administrative hearing, the Department reversed its decision and granted Graude's petition for LEOFF Plan 1 membership. The Department concluded that Graude had proven, by a preponderance of the medical evidence, that he met the minimum medical and health standards in effect at the time of his original employment. See AR at 141, n. 4.
[13] RCW 41.26.211 and its predecessors, RCW 41.26.052 and RCW 41.26.210, provide that a person aggrieved by a final decision of the Department Director must file with the Director of the retirement system a notice requesting a hearing before the Director or the Director's representative (RCW 42.26.221) before petitioning for judicial review.
[14] The applicable statute provides:

[N]o law enforcement officer or fire fighter may become eligible for coverage in [LEOFF] until the individual has met and has been certified as having met the minimum medical and health standards.
AR 140; RCW 41.26.045(1).
[15] Conversely, also in the context of an administrative appeal, the Department previously ruled in Appeal of Zimmerman, DRS Case No. 93-P-004 (March 3, 1995) that:

There is no evidence that petitioner ever was certified as having met the minimum medical and health standards. Therefore, petitioner could never have been considered to have qualified for [LEOFF Plan 1] membership under any interpretation of "law enforcement officer" after August 1, 1971, unless he was considered to have accrued vested rights to LEOFF membership prior to that date.
AR at 140.
[16] RCW 41.26.211 provides:

Notice for hearing required prior to petitioning for judicial review.
Any person aggrieved by any final decision of the director must, before petitioning for judicial review, file with the director of the retirement system by mail or personally within sixty days from the day such decision was communicated to such person, a notice for a hearing. The notice of hearing shall set forth in full detail the grounds upon which such person considers such decision unjust or unlawful and shall include every issue to be considered, and it must contain a detailed statement of facts upon which such person relies in support thereof. Such persons shall be deemed to have waived all objections or irregularities concerning the matter on which such appeal is taken other than those specifically set forth in the notice of hearing or appearing in the records of the retirement system.
(Emphasis added.)
[17] The City cited RCW 41.26.211 for the proposition that Andres was required to file a petition for review of the Department's 1974 decision placing him in Plan 2. That statute, however, does not apply here. It requires that "[a]ny person aggrieved by any final decision of the director must, before petitioning for judicial review, file ... a notice for a hearing...." See RCW 41.26.211. But Andres has not sought judicial review of a Department decision. Thus, the statute that the City cites does not apply.

The City also argued that the three-year statute of limitations set out in RCW 4.16.080 barred the Department's decision to enroll Andres in LEOFF Plan 1. The City correctly pointed out that actions alleging breach of a state employee's pension rights are governed by the three-year statute of limitations. See Helgeson, 75 Wash. App. at 185-86, 881 P.2d 1042; citing Bowles, 121 Wash.2d at 78, 847 P.2d 440, Noah v. State, 112 Wash.2d 841, 774 P.2d 516 (1989), and Martin v. Spokane, 55 Wash.2d 52, 345 P.2d 1113 (1959). But the Department concluded that no statute of limitations applied here, a case not involving breach of an employee's pension rights, but rather correction of enrollment records.
[18] The City argued to the Department that the

"correction of errors" statute cannot authorize the Department to change Dr. Moore's determination and that his recommendation, "right or wrong," must be allowed to stand ... This reasoning is not persuasive. It is the Department's responsibility, not any examining physician's, to correctly administer the minimum medical and health standards. The Department has adopted those standards by rule. Examining physicians are required to conduct LEOFF exams, and to make their resulting recommendations, in a manner consistent with those rules. It defies logic to suggest that the Department, having identified a rejection recommendation which was clearly inconsistent with the spondylolisthesis rule, should have no authority to correct the improper system enrollment which was based on that recommendation.
AR at 142, n. 5.