[No. 20809-5-III. Division Three. January 9, 2003.]

BARNEY P. BUCKLEY, *Appellant*, v. THE DEPARTMENT OF
RETIREMENT SYSTEMS, *Respondent*.

2

*Mark S. McCarty*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Jerome E. Westby, Assistant*, for respondent.

BROWN, C.J. — Barney P. Buckley, Colfax Chief of Police, is enrolled in Plan 2 of the Law Enforcement Officers' and Fire Fighters' retirement system (LEOFF). The Department of Retirement Systems (DRS) denied his petition for retroactive membership in Plan 1, finding he was not employed as a full-time, fully-compensated officer prior to October 1, 1977. The superior court affirmed. Chief Buckley's temporary employment prior to October 1, 1977 did not qualify him for membership in LEOFF Plan 1. Accordingly, we affirm.

## FACTS

The facts are undisputed. Law enforcement officers who establish LEOFF eligibility prior to October 1, 1977 are members of LEOFF Plan 1. RCW 41.26.030(28) (1993). Law enforcement officers who establish LEOFF eligibility on or after October 1, 1977 are members of LEOFF Plan 2. RCW 41.26.030(29). In June 1976, Chief Buckley was hired as a communications officer for the Whitman County sheriff's office. He was enrolled in the Washington Public Employees' Retirement System (PERS). In April 1977, in addition to his position with the sheriff's office, he commenced part-time work as a patrol officer for the city of Colfax. He was paid out of the city's Extra Help and Overtime Appropriation Account.

In September 1977, then Chief of Police, Roland Watts, hired Chief Buckley to fill the position of a full-time officer

who had taken a leave of absence. A city ordinance allowed Chief Watts to hire "such police officers as may be provided for by resolution of the City Council." Clerk's Papers (CP) at 116. In 1977, City Council Resolution No. 59 provided salaries for Chief Watts, an assistant chief of police, and three patrolmen.

Chief Buckley took a leave of absence from his county job to temporarily fill the city position. The Colfax City Clerk estimated Chief Buckley worked 72.9 hours in September. The evidence in the record does not show the weekly breakdown of his hours. Chief Buckley was paid out of the city's Wage Account, but he was paid hourly while the other officers were salaried. In addition, it was estimated Chief Buckley earned $5.10 an hour, while other patrolmen earned a monthly salary of $884.53 up to $950.00. No LEOFF retirement contributions were deducted from his wages in 1977, nor was Chief Buckley enrolled in that plan.

When his leave of absence expired, Chief Buckley returned to his job with the county, but still worked part time for the city. A few months later, in early 1978 after briefly returning to work, the absent Colfax patrolman resigned. Chief Buckley left his county job and began working full time for the city in early 1978, where he has been ever since.

DRS originally placed Chief Buckley in LEOFF Plan 1, but changed his membership to Plan 2 in October 1978. In 1994, Chief Buckley unsuccessfully petitioned for a change in membership from Plan 2 to Plan 1. On appeal, DRS affirmed the denial, concluding Chief Buckley was not a full-time, fully-compensated law enforcement officer in September 1977. Chief Buckley then appealed to the Spokane County Superior Court, which affirmed DRS's final order. Chief Buckley again appealed.

## ANALYSIS

The issue is whether, as a matter of law, Chief Buckley is

eligible for membership in LEOFF Plan 1 based upon the unique facts of this case.

 DRS is charged with (1) administrating and managing LEOFF and (2) implementing the provisions of chapter 41.26 RCW. *City of Pasco v. Dep't of Ret. Sys.*, 110 Wn. App. 582, 587, 42 P.3d 992, *review denied*, 147 Wn.2d 1017 (2002). DRS "has authority to decide all questions relating to LEOFF eligibility." *Id.* We review a DRS determination of eligibility de novo on the administration record before it. *Id.* However, courts give substantial weight to an agency's interpretation of the law. *Id.* (citing *Grabicki v. Dep't of Ret. Sys.*, 81 Wn. App. 745, 752, 916 P.2d 452 (1996)). We will grant relief from DRS's final order if we determine that the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d).

Chief Buckley has the burden of showing DRS's final order was invalid. RCW 34.05.570(1), (2). Chief Buckley contends his work as a patrol officer in September 1977 qualifies him for LEOFF Plan 1 membership and DRS's interpretation of the definition of "law enforcement officer" is erroneous. Under RCW 41.26.030(28), Plan 1 provides retirement benefits for law enforcement officers and fire fighter's who became members of the system prior to October 1, 1977.[1] Former RCW 41.26.030(3) (1993) defined "law enforcement officer" as:

[A]ny person who is serving on a full time, fully compensated basis as a county sheriff or deputy sheriff, including sheriffs or deputy sheriffs serving under a different title pursuant to a county charter, city police officer, or town marshal or deputy marshal, with the following qualifications:

. . . .

(c) Only such full time commissioned law enforcement personnel as have been appointed to offices, positions, or ranks in the police department which have been specifically created or otherwise expressly provided for and designated by city charter

---

[1] The legislature also imposed a requirement that members meet certain minimum medical and health standards. RCW 41.26.045(1). The parties do not contest this requirement on appeal.

provision or by ordinance enacted by the legislative body of the city shall be considered city police officers . . . .

The parties dispute whether Chief Buckley was full time, fully compensated, and appointed to an office created by city ordinance.

■■■■ As an initial matter, the superior court found Chief Buckley was employed full time during the last two weeks of September 1977. Since DRS did not cross-appeal this issue, Chief Buckley contends it is a verity on appeal and we cannot address it. However, when a party appeals a superior court decision rendered pursuant to a request for judicial review, this court reviews de novo the record of the agency, not the superior court. *Anderson v. Pierce County*, 86 Wn. App. 290, 307, 936 P.2d 432 (1997) (citing *Leavitt v. Jefferson County*, 74 Wn. App. 668, 677, 875 P.2d 681 (1994)). Furthermore, Chief Buckley overlooks the superior court's ultimate finding that "[Chief] Buckley was not a full time officer within the meaning of [former] RCW 41.26.030(3)(c)." CP at 353. Our issue is whether DRS misinterpreted or misapplied the law by concluding Chief Buckley was not a full-time employee in September 1977.

■■ Relating to LEOFF, WAC 415-104-0114 defines a "full time" employee as one who "is regularly scheduled to earn basic salary from an employer for a minimum of one hundred sixty hours each calendar month." The parties stipulate that Chief Buckley worked an estimated 72.9 hours in September 1977. While a 160-hour work month would typically break down to four 40-hour workweeks, there is no evidence in DRS's record that Chief Buckley ever worked a 40-hour workweek in September 1977. Furthermore, Chief Buckley earned an hourly wage, not a "basic salary" as discussed in WAC 415-104-0114. RCW 41-.26.030(13)(a) defines "basic salary" for Plan 1 members as "the basic *monthly* rate of salary . . . ." (Emphasis added.) There is no dispute Chief Buckley was paid hourly. Thus, Chief Buckley's minimal hours and hourly pay preclude him from full-time status as defined in WAC 415-104-0114.

Next, we address whether Chief Buckley was fully compensated. WAC 415-104-0115 defines "fully compensated" as an employee who:

> [E]arns basic salary and benefits from an employer in an amount comparable to the salary received by other full-time employees of the same employer who:
>
> (1) Hold the same or similar rank; and
>
> (2) Are employed in a similar position.

As concluded above, Chief Buckley did not earn a basic salary. Moreover, he was not paid in the same manner or in a comparable amount to the other officers. Chief Buckley was paid hourly while the other officers were salaried, and Chief Buckley's rate of pay was $5.10 per hour, less than the other officers' pay if broken down to an hourly rate.

Chief Buckley contends the definitions in WAC 415-104--0114 and WAC 415-104-0115 apply only to Plan 2 members. However, the code was "adopted to implement administration of chapter 41.26 RCW" without distinction between Plan 1 and Plan 2. WAC 415-104-005. Therefore, the above definitions apply to LEOFF membership in general and not exclusively to Plan 2 members.

Finally, to be considered a "city police officer," Chief Buckley must have also met the qualifications set forth in former RCW 41.26.030(3)(c). This section requires an officer to be appointed to a position in the police department that was "specifically created or otherwise expressly provided for" by city charter provision or ordinance. Former RCW 41.26.030(3)(c).

When Chief Buckley was hired to fill in for the officer on leave, city ordinance permitted Chief Watts to hire as many officers as provided for by city resolution. City Resolution No. 59 permitted Chief Watts to hire an assistant chief of police, and three patrolmen. The officer's position Chief Buckley was filling in for was created by city ordinance. The issue then is whether Chief Buckley's temporary position was specifically created by city resolution. It was not. Chief Buckley was filling in for another officer. The officer was

appointed to a specifically created position, not Chief Buckley. Further, the officer was still holding his position; he returned to work before resigning after his leave of absence.

■ Chief Buckley contends this issue was not addressed by DRS; therefore, it is assumed DRS concluded in his favor. In its final order, DRS sets forth the requirement of being appointed to a specifically created position. It goes on to conclude Chief Buckley was not appointed to a position, nor could he have been because the city resolution that year allowed only a certain number of patrolmen. Further, DRS concluded Chief Buckley was temporarily filling in "for another man's job." CP at 326. Thus, DRS addressed this issue. Nevertheless, we have inherent authority to consider all issues necessary to reach a proper decision. *Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 402, 842 P.2d 938 (1992).

■ Chief Buckley also contends employee benefits accrue from the date of employment. Chief Buckley is correct that several Washington cases support this position. *See, e.g.*, *Crabtree v. Dep't of Ret. Sys.*, 101 Wn.2d 552, 556-57, 681 P.2d 245 (1984); *Wash. Fed'n of State Employees, Council 28 v. State*, 101 Wn.2d 536, 541, 682 P.2d 869 (1984); *Hertzke v. Dep't of Ret. Sys.*, 104 Wn. App. 920, 930, 18 P.3d 588 (2001). However, courts also look at the statutes in effect at the time of employment to determine initial eligibility. *Hertzke*, 104 Wn. App. at 930. Here, the legislature placed certain requirements for LEOFF Plan 1 membership. Chief Buckley did not meet these requirements in September 1977. No retirement contributions were deducted from his wages and he remained enrolled in PERS through his county job. *See* RCW 41.40.023(4) (PERS members generally may not be enrolled in other state retirement plan).

In sum, Chief Buckley has not met his burden in proving DRS's final order is invalid. DRS properly interpreted and applied the law based on the record before it. Since Chief

Buckley has not prevailed on any issue here, his attorney fee requests are denied.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

Review denied at 149 Wn.2d 1036 (2003).