[No. 31584-0-II.   Division Two.   April 26, 2005.]

BULLSEYE DISTRIBUTING, L.L.C., *Appellant*, v. THE GAMBLING COMMISSION, *Respondent*.

232

*Mark A. Wheeler* and *Patrick M. Risken* (of *Evans, Craven & Lackie, P.S.*), for appellant.

*Robert M. McKenna, Attorney General*, and *Paul O. Goulding, Assistant*, for respondent.

¶1 ARMSTRONG, J. — Bullseye Distributing, L.L.C., sought a declaratory order that the slot-machine-like game in its sports card vending machine was a promotional contest of chance exempt from regulation by the State of Washington Gambling Commission. The Commission adopted an ad-

ministrative law judge's determination that the game was a gambling device subject to regulation rather than a promotional contest. Bullseye appeals. Because the game meets at least one definition of "gambling device" under RCW 9.46.0241, we affirm.

## FACTS

### I. Procedural History

¶2 In February 2002, Bullseye Distributing, L.L.C., petitioned the Washington State Gambling Commission for a declaratory order that its Freespin II machine was a promotional contest of chance (PCOC) and not a gambling activity under Washington's gambling laws. The Commission referred the matter to an administrative law judge (ALJ) to develop the facts, hear argument, and enter an initial order.

¶3 The ALJ determined that the Freespin II was a gambling device under RCW 9.46.0241. The Commission adopted the ALJ's findings of fact, conclusions of law, and the initial declaratory order. The Thurston County Superior Court affirmed the Commission; Bullseye appeals to this court. It does not challenge any factual findings.

### II. The Freespin II Machine

¶4 The Freespin II is a patented electronic vending machine designed to dispense collectible sports cards. The machine is also designed to emulate a casino's eight-line video slot machine. The machine is housed in a stand-alone cabinet and has a video monitor display with three rows of three pictures and simulates slot machine play by aligning these pictures in winning or losing combinations when the game is played. It has a "clear switch" that allows an operator to remove game credits, a bill acceptor,[1] and a port for dispensing the sports cards. The cabinet contains elec-

---

[1] The place to put money into the machine.

tronic devices that govern the machine's operation, including circuit boards that generate the video display and keep track of the number of cards sold, promotional points awarded, and any prizes won.

¶5 The video monitor displays the game's official rules and the game itself. The simulated video reels have pictures of fruits, bells, bars, and "7s" that align in winning or losing combinations when the game is played. The circuit board can be programmed to display other objects or characters, but the game's designer believed that the game must emulate the spinning fruit on casino slot machines as closely as possible in order to promote collector card sales. These alignments are determined by a pseudo-random number generator in the game software. The video display is generated by a specially designed circuit board with a 36-pin connector with harnessing equipment that allows monitoring of various meters, including one on the bill acceptor. The Freespin II emits the "attractor" sounds associated with casinos.

¶6 The Freespin II may be played in two ways. A person may insert money into the machine's bill acceptor; for each dollar inserted, the person receives one sports card. The person receives 20 free play points for each card purchased. A person may insert up to $20 at one time. After receiving his card(s), the person may then enter the contest or walk away. If the person walks away, his play points remain in the machine and available for use.

¶7 A person may also play the game without purchasing a card by using a promotional play voucher. These vouchers may be obtained via mail from a Freespin distributor, by asking at a Freespin II location, from the Internet, or by calling a toll-free telephone number. When a person presents a voucher, an attendant enters the play points into the machine. Vouchers are limited to one per person per day per location.

¶8 A person must play a minimum of eight points. They begin play by pressing a "start" button. The machine then deducts the points played from the person's credits. If the

person wins, the machine gives them the option to "double down," i.e., take the points they have won or to play again and double the winnings. Points won by playing the game are displayed in a "prize pool" on a separate part of the video screen. Prize points can be converted back to play points if a person uses all of his available play points. If a person has fewer than eight play points remaining, he must purchase more cards or use a voucher to continue playing.

¶9 The Freespin II game is available only if the machine is stocked with cards; it becomes inoperable if it runs out because an interrupt circuit on the bill acceptor prohibits it from receiving money. If a person accumulates a predetermined target number of prize points, he has won the game and can redeem the prize points for cash or merchandise. Play and prize points are not redeemable at any other time or in any other circumstances. Once the prize target is reached, the person playing must either claim his prize or walk away; the prize points cannot be replayed.

¶10 At the hearing, Bullseye representatives demonstrated the Freespin II. The ALJ determined that RCW 9.46.0241, the gambling device statute, contained four independent definitions of "gambling device" and that the Freespin II machine met three of these definitions.

## ANALYSIS

### I. Gambling Device or PCOC?

¶11 Because Bullseye has not challenged the agency's findings, they are verities. *Hertzke v. Dep't of Ret. Sys.*, 104 Wn. App. 920, 927, 18 P.3d 588 (2001) (citing *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980)). But it argues that the Commission erroneously interpreted and applied the gambling device and PCOC statutes, RCW 9.46.0241 and RCW 9.46.0356.

¶12 Specifically, Bullseye argues that the ALJ (1) applied the wrong definition of "consideration," (2) erroneously interpreted RCW 9.46.0241 to include four separate defini-

tions of "gambling device," and (3) erroneously concluded that the Freespin II machine is a "gambling device" under three of these definitions. Bullseye's arguments about the definition of "consideration" are relevant to the issue of whether the Freespin II is a gambling device under RCW 9.46.0241(1). We first consider whether RCW 9.46.0241 contains four definitions of gambling device or just one. If the statute contains four separate definitions, we must affirm the Commission if the Freespin II meets any one definition.

### 1. Standard of Review

¶13 Under the Administrative Procedure Act,[2] the party challenging the agency action bears the burden of demonstrating its invalidity. RCW 34.05.570(1)(a). When reviewing an agency's decision, we sit in the same position as the trial court and apply the appropriate standard of review in RCW 34.05.570 directly to the agency record. *Brighton v. Dep't of Transp.*, 109 Wn. App. 855, 861-62, 38 P.3d 344 (2001) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)). We will grant relief if an agency has misinterpreted or misapplied the law—an issue we review de novo. RCW 34.05.570(3)(d); *Thurston County v. Cooper Point Ass'n*, 148 Wn.2d 1, 8, 57 P.3d 1156 (2002).

### 2. Four Definitions or One?

¶14 We give considerable weight to an agency's construction of a statute it administers. *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 743, 887 P.2d 891 (1995). But courts have the ultimate authority to interpret statutes and will not defer to an agency's interpretation that conflicts with the statute. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994). The Commission is charged with administration and enforcement of Washington's gambling laws. *See* RCW 9.46.040, .070.

---

[2] Ch. 34.05 RCW.

¶15 "Gambling" is defined as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." RCW 9.46.0237. Under RCW 9.46.0241, a "gambling device" is:

(1) Any device or mechanism the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance, including, but not limited to slot machines, video pull-tabs, video poker, and other electronic games of chance; (2) any device or mechanism which, when operated for a consideration, does not return the same value or thing of value for the same consideration upon each operation thereof; (3) any device, mechanism, furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and (4) any subassembly or essential part designed or intended for use in connection with any such device, mechanism, furniture, fixture, construction or installation.

¶16 But PCOCs are authorized by the legislature and are not considered gambling. RCW 9.46.0356(2). These contests involve the elements of prize and chance, but not consideration. RCW 9.46.0356(1). A PCOC may not require that a person pay consideration or purchase merchandise to participate in the contest. RCW 9.46.0356(4)(a), (b). But the PCOC promoter may give additional entries upon the purchase of merchandise, provided the promoter provides an alternate entry method that does not require consideration. RCW 9.46.0356(4)(b). Unless authorized by the Commission, a gambling device may not be used in a PCOC. RCW 9.46.0356(6). Common examples of PCOCs include promotions that rely on sweepstakes, drawings, and instant win scratch-off or peel-off tickets.

¶17 Bullseye argues that RCW 9.46.0241 contains four elements that must all be met for a machine to qualify as a gambling device. Although the statute is not written in

the disjunctive, we hold that it contains four separate definitions of "gambling device."

¶18 If the meaning of a statute is clear from its plain language, we give effect to that meaning. *McGinnis v. State*, 152 Wn.2d 639, 645, 99 P.3d 1240 (2004) (citing *Fraternal Order of Eagles Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002)). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *McGinnis*, 152 Wn.2d at 645.

¶19 In certain circumstances, the conjunctive "and" and the disjunctive "or" may be substituted for each other if it is clear from the plain language of the statute that it is appropriate to do so. *Mt. Spokane Skiing Corp. v. Spokane County*, 86 Wn. App. 165, 174, 936 P.2d 1148 (1997) (citing *State v. Tiffany*, 44 Wash. 602, 604, 87 P. 932 (1906)). In *Mt. Spokane*, Division Three interpreted the following language in a former version of RCW 35.21.730(4), which concerned the powers of municipal governments:

> Create public corporations, commissions, and authorities to: Administer and execute federal grants or programs; receive and administer private funds, goods, or services for any lawful public purpose; and perform any lawful public purpose or public function.

Former RCW 35.21.730(4) (1997).

¶20 Division Three rejected the argument that the public authority created by Spokane County had to perform all three functions listed in former RCW 35.21.730(4). *Mt. Spokane*, 86 Wn. App. at 174.

¶21 Here, the different subsections of RCW 9.46.0241 begin with similar phrases, such as "any device or mechanism" or "any device" or "any subassembly." This language plainly refers to separate devices, each of which meets the remaining conditions of each subsection. If all the subsections of RCW 9.46.0241 referred to the same device, the legislature would have started the statute with "any device" and then added the separate sections with only the addi-

tional qualifying conditions that make *the* device a gambling device. And *the* device would have to meet all the qualifying characteristics. But the legislature clearly specified three separate devices in subsections one through three and a separate fourth device that consists of the inner workings of devices one through three. We find RCW 9.46-.0241 unambiguous in defining four separate devices, any one of which is a gambling device.

¶22 We next consider whether the Freespin II is a gambling device under at least one of the statutory subsections.

## II. RCW 9.46.0241(1)

¶23 RCW 9.46.0241(1) defines "gambling device" as

[a]ny device or mechanism the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance, including, but not limited to slot machines, video pull-tabs, video poker, and other electronic games of chance.

¶24 Bullseye first argues that the ALJ should have used the definition of "consideration" in the PCOC statute instead of the definition of "thing of value" in RCW 9.46.0285. The Commission responds that the definition of "consideration" in RCW 9.46.0356 is expressly limited to the PCOC statute. The Commission is correct.

¶25 RCW 9.46.0356(5)(a) provides:

As used in this section, "consideration" means anything of pecuniary value required to be paid to the promoter or sponsor in order to participate in a promotional contest. Such things as visiting a business location, placing or answering a telephone call, completing an entry form or customer survey, or furnishing a stamped, self-addressed envelope do not constitute consideration.

(Emphasis added.)

¶26 In contrast, RCW 9.46.0285 provides:

"Thing of value," *as used in this chapter*, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

(Emphasis added.)

¶27 Thus, the "thing of value" definition applies to the entire chapter 9.46 RCW; the "pecuniary value" definition of consideration applies only to the PCOC section. And in deciding whether the Freespin II is a gambling device, we look to the broader definition first. Otherwise we would have to assume the device qualifies as a PCOC device to apply the narrower definition. This would beg the question.

¶28 Applying the "thing of value" definition, the ALJ reasoned that the play points obtained when one buys a sports card from the Freespin II are "things of value" because they extended a service or privilege of playing the game without charge. *See* RCW 9.46.0241(1).

¶29 RCW 9.46.0285's "thing of value" concept is similar to dictionary definitions of "consideration." For example, the definition of "consideration" in *Black's Law Dictionary* is not limited to things of pecuniary value. It defines "consideration" as "[s]omething (such as an act, forbearance, or a return promise) bargained for and received by a promisor from a promisee." BLACK'S LAW DICTIONARY at 324 (8th ed. 2004). And because "consideration" is not defined in the Gambling Act except in the statute applicable only to PCOCs, we may resort to such definitions. *See Concerned Ratepayers Ass'n v. Clark County Pub. Util. Dist. No. 1*, 138 Wn.2d 950, 959, 983 P.2d 635 (1999) (resort to dictionary definition proper where statute does not define the word).

¶30 Under the definition of "gambling device" in RCW 9.46.0241(1), the play credits received after a person inserts a dollar may be used by playing the Freespin II

game, to create a right to money, credits, or other things of value, pending the result of the operation of chance. The original consideration is the money inserted in the machine, which results in a card being dispensed and an award of play points. A player receives the credits by inserting a dollar or by presenting a promotional voucher. If a person wins, he may attempt to increase his points by risking them with the double down feature. If the prize point target is reached, the person can redeem the points for cash and/or merchandise. The consideration actually exchanged in the attempt to create a right to money or a thing of value by the operation of chance is the chosen number of play points. Although they may lack pecuniary value on their own, these points fall within the definition of "thing of value" because they extend the privilege of playing the game without charge. *See* RCW 9.46.0285.

¶31 The Commission rejected the argument that the "no purchase necessary" option removes the element of consideration because accepting it would mean that one could combine the operation of any slot machine with the sale of a product, thus separating the consideration from the gambling device and marrying it to the product sale. And although a person could receive promotional play points without purchasing a sport card, it could not purchase a card without receiving play points. We conclude that the Commission did not err in finding the Freespin II to be a gambling device under RCW 9.46.0241(1).

¶32 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, A.C.J., and HOUGHTON, J., concur.

Review denied at 155 Wn.2d 1027 (2005).